WEISS & JONES
Philip E. Weiss, Esq.
1551 Shelter Island Drive
San Diego, California 92106
Telephone: (619) 225-8884
Facsimile: (619) 225-8801

Attorneys for Plaintiff
Bartell Hotels, a California Limited Partnership,
dba Half Moon Anchorage

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARTELL HOTELS, A California Limited Partnership, dba HALF MOON ANCHORAGE,<br><br>Plaintiff,<br><br>v.<br><br>M/Y CLAIRE IRENE, a 1968 Owens Motor Yacht of Approximately 40-Feet In Length And 11-Feet In Beam, Bearing California D.M.V. Registration No. CF 8646 ED, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*,<br><br>Defendant. | Case No. 07-CV2097L (BLM)<br><br>IN ADMIRALTY<br><br>DECLARATION OF MICHAEL J. ARDELT CONCERNING EXISTENCE OF MONTH-TO-MONTH WHARFAGE CONTRACT FOR DEFENDANT VESSEL<br><br>F.R.C.P. Supplemental Admiralty Rules C and E. |

I, MICHAEL J. ARDELT, declare under penalty of perjury under the laws of the United States and the State of California as follows. The matters stated are within my personal knowledge, except as to matters stated on information and belief, and as to such matters I believe them to be true.

1. I was formerly employed as the General Manager of Half Moon Anchorage, the marina located at 2323 Shelter Island Drive, San Diego, California (the "Marina") where the Defendant Vessel lies.

2. It is my understanding and belief that on January 2, 2007 the former owners of Half Moon Anchorage sold their interests in the Marina to the Plaintiff in this action, Bartell

1  Hotel, Inc. It is my further understanding that, in connection with this sale transaction, all of
2  the former owners' rights in the existing wharfage contracts were assigned to Bartell Hotels,
3  Inc., the Plaintiff herein.
4       3.     From December, 1989 until the above transfer of ownership in January, 2007
5  (and for several years prior) I served both as the General Manager of both Half Moon
6  Anchorage and an adjacent property under common ownership, known as Bay Club Hotel
7  and Marina, and I had final on-site authority with respect to marina matters at both locations,
8  as the Marina Manager for both properties (Ann Miller) was responsible to me. I continue to
9  serve as the General Manager of Bay Club Hotel and Marina.
10      4.     Prior to filing this legal action an attorney representing the Plaintiff, Philip E.
11 Weiss, asked if I could provide him with a copy of the written contract entered into between
12 Half Moon Anchorage and the owner of the Defendant Vessel in this action, Kurt Hach.
13      5.     Unfortunately, after conducting a diligent and good faith search of relevant
14 files, I was unable to locate a copy of the contract in question.
15      6.     I do, however, specifically recall having personally seen an executed written
16 contract for the provision of slip space for the benefit of Mr. Hach's vessel (the Defendant
17 Vessel) at Half Moon Anchorage bearing the signatures of Mr. Hach and the Marina
18 Manager at the time, Ann Miller who, as was then customary, signed the contract on behalf
19 of the marina's owners.
20      7.     It is my recollection that Mr. Hach's contract was identical to those used in
21 connection with other marina tenants. A true and correct copy of an exemplar, which I
22 believe to be the same form contract Mr. Hach signed, is attached hereto as Exhibit A. I have
23 redacted the name, address and other information of the marina tenant, in order to maintain
24 the vessel owner's privacy.
25      8.     I believe that Exhibit A, entitled Agreement for Wharfage and Docking is by its
26 own terms a month-to-month contract, terminable by either party, as paragraph 2 specifically
27 provides that "Owner understands and agrees that this agreement memorializes a month-to-
28 month contract to provide mooring . . . . [and paragraph 5 provides that] Owner understands

1  and agrees that this agreement may be terminated by either party upon written notice to the
2  other in such a manner so that the other party will receive said notice at least thirty (30) days
3  before said termination."
4       If called to testify as to the foregoing matters, I could and would competently so
5  testify.
6       Executed this 30th day of November, 2007 at San Diego, California.

*[signature]*

Michael J. Ardelt
General Manager, Bay Club

ArdeltDeclaration#6

DECLARATION OF MICHAEL J. ARDELT CONCERNING EXISTENCE                                -3-
OF MONTH-TO-MONTH CONTRACT FOR DEFENDANT VESSEL                         Case No. 07-CV2097L (BLM)



# Half Moon Anchorage

## AGREEMENT FOR WHARFAGE AND DOCKING

1. HALF MOON ANCHORAGE, hereinafter referred to as "Anchorage" hereby agrees to provide wharfage and docking to the following named person(s), hereinafter referred to as "Owner," for the following described vessel under the terms and conditions as set forth herein:

Registered Owner's name: ▓▓▓▓▓▓▓▓▓▓ Home phone: ▓▓▓▓▓▓▓▓

Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Bus. phone: ▓▓▓▓▓▓▓▓

Legal Owner's name: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ State or Country Vessel Registered: ▓▓▓

Vessel's name: ▓▓▓▓▓▓▓▓▓▓ Type of vessel: ▓▓▓ Draft: ▓▓▓

Length (including bowsprit, bowplank, swimstep, vane and other protrusions): ▓▓▓ Beam: ▓▓▓

Hull No.: _____ CF or Documentation No.: ▓▓▓▓▓ Manufacturer or make: ▓▓▓

2. Owner understands and agrees that this agreement memorializes a month to month contract to provide mooring, berthage, dockage, wharfage and anchorage for the above described vessel only at the request of Owner, who warrants that he is the owner or co-owner of said vessel, and that said vessel will be berthed in slip number ▓▓▓▓ of Anchorage. Further, Owner understands and agrees that the berthing space specified in this agreement or amendment thereto shall not be sublet and Owner will not allow another vessel other than the vessel specified in this agreement to occupy said berthing space without prior written permission of Anchorage. Further, Owner understands and agrees that no rights of Owner created in this agreement may be transferred or assigned without prior written approval of Anchorage. Further, Owner agrees that any such attempted transfer shall give Anchorage the right to terminate this agreement forthwith and that the sale, chartering, rental or other transfer of use of Owner's registered vessel shall automatically terminate this agreement. Further, that if the vessel berthed under this agreement is co-owned, the Owner executing this agreement hereby represents and warrants that he is authorized to bind all co-owners of the vessel in accordance with the terms of this agreement, and he will produce evidence of said authorization or secure co-owner's signature hereon within seven (7) days. Further, Owner agrees that during this agreement that Owner shall provide proof to Anchorage's satisfaction of ownership of said vessel upon demand of Anchorage.

3. Owner agrees and covenants that in consideration of the berthing provided in Paragraph 2 above he will pay to Anchorage the sum of $ ▓▓▓▓▓▓▓ per month, or $ ▓▓▓▓▓▓▓ per day for any fractional portion of a month, due and payable in advance on the first of each month. Owner further agrees that this berthing fee is subject to increase at Anchorage's discretion upon thirty (30) days written notice. Further, Owner agrees that said fee is based on the slip length or total length of vessel, including bowsprit, bowplank, swimstep, vane and any other protrusion, whichever is longest.

4. Owner understands and agrees to deposit with Anchorage a sum equal to the first month's berthing fee as and for a deposit toward any damages done to berth or slip by or on account of Owner that are unsatisfied upon termination of this agreement. Owner further agrees that said sum shall be added to by an amount equal to any increases in berthing fee at the time of such increase. Owner agrees that any unused portion of said deposit may be applied toward any unpaid berthing fees upon termination.

5. Owner understands and agrees that this agreement may be terminated by either party upon written notice to the other in such a manner so that the other party will receive said notice at least thirty (30) days before said termination. Upon such termination by either party, Owner agrees to remove the vessel within the notice period and should he fail to do so, Anchorage may cause same to be removed at the expense and for the account of Owner. Further, Owner understands and agrees that should he terminate and fail to give the aforesaid written notice he will pay to Anchorage a month's berthing fee beyond the end of any month that the vessel shall be removed.

6. Owner understands and agrees that when Owner's boat enters the Anchorage it immediately comes under the jurisdiction of the Anchorage and shall be berthed only where ordered, maneuvered as directed, and moored in a safe manner. All connections to Anchorage's electrical receptacles shall be grounded and all wiring leading from receptacles to vessel shall be in accordance with the posted rules and regulations of Anchorage. Owner expressly gives to Anchorage the right to move, relocate or change the position of his vessel when it is deemed necessary for the safety, convenience, and efficient utilization of the berthing of the Anchorage.

7. Owner understands, and agrees to abide by the requirement of Anchorage that all vessels while berthed at Anchorage are to be in a seaworthy, and fully operable condition, well painted, clean, sanitary, and in yacht condition for the benefit of fellow yachtsmen and slipmates. Further, Owner agrees to allow no part of Owner's vessel to extend over a main walkway or beyond the end of the berth without the prior written permission of Anchorage.

8. Owner agrees that he shall maintain and keep the area in and about the slip assigned him in as clean and sanitary condition as it was when leased. Owner further agrees that he shall not store or permit to be stored any materials, equipment or other property on the floats, docks or premises other than within the confines of Anchorage furnished dock boxes. Owner further agrees that if he should fail to keep said area in a clean and sanitary condition that the Anchorage may at its sole discretion make said area clean and sanitary and Owner agrees to pay Anchorage for any and all costs of such labors. Owner further agrees to not store any flammables in dock boxes.

9. Owner agrees to abide by posted rules and regulations of Anchorage while operating the vessel and/or any power driven or noise making equipment on said vessel.

10. Owner agrees that he shall not allow any paint remover, burning of paint, or spraying of paint on the topside or above decks or to paint topside while in the rented space, except with Anchorage's express permission. Owner further agrees that he will not perform any major construction or repairs on vessel while at Anchorage docks and further, that Anchorage shall be the sole judge as to what constitutes "major construction or repairs."

11. Owner agrees that he, his family or guests shall not commit any acts of pollution or nuisance, including but not limited to the throwing, discharging or depositing from any vessel or float any refuse matter, oil, spirits, flammable liquid, or oily bilge into the water or upon the premises of the Anchorage or loud noise or music, etc. Owner further understands and agrees that only one parking space for Owner's personal vehicle is allocated per berthing space and that no motorhomes, trailers, or other oversize vehicles (over 19 ft.) are to be parked in the parking space without prior written consent of Anchorage. All guest vehicles, additional vehicles, and oversize vehicles (over 19 ft.) must park outside and off of Anchorage parking area. Anchorage reserves the right to issue parking stickers.

—OVER

Rev. 8/87

EXHIBIT A

12. Owner agrees not to permit any dogs, cats or other such animals on the premises or the dock area without the prior specific written permission of Anchorage. Any such animals permitted on the premises or dock must be on a leash, and Owner shall be responsible for any clean up. Further, Owner understands and agrees that as a live-aboard, Owner shall not keep or maintain any such animals in or about the Anchorage.

13. Owner understands and agrees that Owner shall not live aboard his vessel nor shall he allow his family, guests, workers, or agents to live aboard his vessel except with the written permission of Anchorage. Living aboard shall not be construed to include weekends or holidays.

14. Owner agrees that without the prior specific written permission of Anchorage he shall not display for sale or lease signs nor shall he allow any solicitors, brokers, salesmen, or workmen, other than regular employees of Anchorage and full time paid hands regularly employed on said vessel, into Anchorage area to show or work on vessel without prior coordination with Anchorage's office. Owner understands that this limitation is for the protection of Owner's vessel and other vessels in the Anchorage.

15. Owner agrees that any vessel berthed at Anchorage is to be solely for pleasure and shall not be used for any commercial undertaking without Anchorage's specific permission in writing.

16. Owner agrees that a payment of any mooring, berthage, dockage, wharfage or anchorage fees, and related charges, received by Anchorage after the tenth (10th) of the month, shall be considered a late payment. Further, Owner understands that any checks returned for insufficient funds shall also be considered and treated as late payments. Further, Owner agrees that all late payments shall have added thereto as a late charge an amount equal to ten percent (10%) of the payment and shall be paid along with said late payment unless other arrangements are made with Anchorage. If not paid same will be added to the next month's rent. Further, Owner agrees that should Owner become thirty (30) days delinquent, that this lease shall be terminated on the thirty-first (31st) day and that thereafter Owner shall be charged storage, at a rate per day equivalent to the daily berthing rate then prevailing for a visiting vessel of Owner's vessel's size. Further, Owner agrees that he shall pay any and all sums of money due and owing Anchorage by Owner for any reason whatsoever before the vessel described in Paragraph 1. of this agreement is removed from the assigned slip of Anchorage under a termination of this agreement. Further, Owner hereby pledges the aforedescribed vessel with Anchorage to secure payment of all accounts, debts, bills, and sums of money becoming due hereunder, and agrees that Anchorage shall have a specific lien on said vessel as security for any said amounts. Further, Owner agrees and acknowledges that Anchorage may, at its discretion, satisfy the aforesaid lien by sale as provided for in Section 500 et seq., and related sections, of the State of California Harbors and Navigation Code, or any similar United States Code or any successor Laws or Codes of the State of California or the United States of America.

17. Owner agrees that should Anchorage find it necessary to retain the services of a Lawyer to institute legal action to enforce or recover payment of any sums due under this agreement, Owner shall pay all Lawyer's fees and costs incurred by Anchorage.

18. Owner agrees that should he, his family or any agent, guest, or business visitor of Owner's cause any damage or loss to the Anchorage's buildings, yards, docks, or equipment, or that belonging to any customer of the Anchorage or guest thereof, or damage or loss to the person of any employee or customer of Anchorage or guest thereof, Owner shall be responsible for said damage or loss and to that end Owner agrees to carry Public Liability Insurance in an amount of $100,000.00 and $300,000.00 and property damage insurance in an amount of at least $50,000.00 and will provide proof of same to Anchorage upon request. That should said insurance not cover the cost of such repair or loss, then same shall become part of Owner's bill due Anchorage and be treated the same as any other sum or sums due under the terms of this agreement, and Owner agrees to hold Anchorage harmless for any of the aforesaid damages to other Owners' vessels and/or associated equipment.

19. Owner further agrees to hold Anchorage free from any and all liability for any property damages, theft, loss, or personal injuries suffered by owner, his family or guests or their property while using Anchorage's facilities, or caused by outside parties, storm or acts of God. Further, Owner hereby specifically releases Anchorage from any and all liability for any such damage to or destruction of Owner's vessel berthed hereunder or any of its equipment, fittings or fixtures, or injuries to Owner, his family or guests, from any cause resulting from the negligence of the Anchorage, its employees or agents.

20. Owner understands and acknowledges that Anchorage makes no warranties, express or implied, as to the suitability or condition of slips, floats, walks, gangways, ramps, buildings or any appurtenances thereto for Owner's specific vessel or needs, and that Owner enters into this agreement accepting the foregoing.

21. Owner shall notify the Anchorage when he expects his vessel to be away from its slip for any period in excess of one week. Owner understands and agrees that at any time Owner's vessel is absent for more than a one week period, Anchorage has the right to temporarily let Owner's assigned slip with no credit applied to Owner's monthly rental during the vessel's absence.

22. Owner agrees to comply, and to cause his agents, employees, children and guests to comply with all posted rules and regulations of Anchorage as fully as though they were set forth herein, and should any such person breach any provision of this agreement or violate any posted rule or regulation, Anchorage may terminate this agreement immediately, remove the boat from her mooring space and store vessel either within or outside of Anchorage at Owner's risk and expense, and retake possession of the mooring space.

23. Owner and Anchorage agree that waiver of any condition herein is not to be considered a waiver of any other condition, nor a continuing waiver of the condition waived.

24. This agreement is not intended in any manner whatsoever to transfer the burdens or benefits of property ownership from Anchorage to the Owner.

25. OWNER AGREES THAT HE HAS READ AND APPROVED THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF A TRUE AND CORRECT COPY HEREOF.

Dated: _____

HALF MOON ANCHORAGE

by _____

OWNER _____
OWNER _____
OWNER _____

Owner's personal vehicle information:

1. Make: _____ Model: _____ Year: _____ Color: _____

   License No.: _____ State: _____ Registered to: _____

2. Make: _____ Model: _____ Year: _____ Color: _____

   License No.: _____ State: _____ Registered to: _____

EXHIBIT A