1  WEISS & JONES
   Philip E. Weiss, Esq.
2  1551 Shelter Island Drive
   San Diego, California 92106
3  Telephone: (619) 225-8884
   Facsimile: (619) 225-8801
4
   Attorneys for Plaintiff
5  Bartell Hotels, a California Limited Partnership,
   dba Half Moon Anchorage
6

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 | BARTELL HOTELS, A California Limited    ) Case No. 07cv2097-L(BLM)
     Partnership, dba HALF MOON ANCHORAGE,   )
12 |                                         ) IN ADMIRALTY
              Plaintiff,                     )
13 |                                         ) DECLARATION OF PHILIP E.
     v.                                      ) WEISS IN SUPPORT OF VESSEL
14 |                                         ) ARREST AND REGARDING
     M/Y CLAIRE IRENE, a 1968 Owens Motor    ) SUBMISSIONS OF SECOND
15 | Yacht of Approximately 40-Feet In Length And ) APPLICATION FOR ORDER
     11-Feet In Beam, Bearing California D.M.V. ) AUTHORIZING ISSUANCE OF
16 | Registration No. CF 8646 ED, AND ALL OF ) WARRANT FOR VESSEL ARREST
     HER ENGINES, TACKLE, ACCESSORIES,       ) AND SECOND APPLICATION
17 | EQUIPMENT, FURNISHINGS AND              ) FOR ORDER APPOINTING
     APPURTENANCES, in rem,                  ) SUBSTITUTE CUSTODIAN
18 |                                         )
              Defendant.                     ) F.R.C.P. Supplemental Admiralty
19 |_____    ) Rules C and E.

20

21     I, Philip E. Weiss, declare under penalty of perjury under the laws of the United States

22 and the State of California that the following is true and correct.

23     1.    I am an attorney for Plaintiff BARTELL HOTELS, dba HALF MOON

24 ANCHORAGE (hereinafter "PLAINTIFF") in this action. I am in good standing and

25 licensed to practice before all State and Federal courts located in California, including the

26 United States District Court for the Southern District of California. The focus of my practice

27 is now, and has been for approximately 17 years, maritime law, a subject I have taught as an

28 Adjunct Professor for approximately the past eight years. I also serve by designation of the

| | |
|---|---|
| 1 | California Bar Association Board of Legal Specialization on the Consulting Group for |
| 2 | Specialization of Admiralty and Maritime Law. I believe I have caused the vessel arrest of at |
| 3 | least three dozen vessels over the past five years, in both the Southern and Central Districts |
| 4 | of California. Based on the above experiences I believe Plaintiff holds a maritime lien that |
| 5 | encumbers the the Defendant Vessel, and that therefore she is subject to arrest by Order of |
| 6 | this Honorable Court as a matter of law. I have personal knowledge of the facts recited |
| 7 | herein and if called and sworn to testify, could and would competently so testify. |
| 8 | 2. In order to address issues raised in this Honorable Court's November 15, 2007 |
| 9 | Order (1) Dismissing Complaint With Leave to Amend and (2) Denying As Moot |
| 10 | Application for Vessel Arrest Warrant and Appointment of Substitute Custodian, I prepared |
| 11 | and recently filed an Amended Verified Complaint for Vessel Arrest, which provides further |
| 12 | factual details that are intended to address issues raised in the Court's November 15, 2007 |
| 13 | Order. Attached as Exhibit A to this Amended Complaint is a copy of an exemplar of the |
| 14 | wharfage contract at issue. As explained in detail in the Declaration of Michael J. Ardelt |
| 15 | Concerning Existence of Month-to-Month Wharfage Contract for Defendant Vessel (filed |
| 16 | simultaneously with the Amended Verified Complaint), Plaintiff was unable (as is |
| 17 | customary) to attach a copy of the wharfage contract at issue to its originally filed Verified |
| 18 | Complaint because, some years ago, Mr. Ardelt forwarded it to an insurance company, which |
| 19 | (despite his requests) has not returned it or a copy, so it can be attached to Plaintiff's |
| 20 | pleading. Apart from this Paragraph, this Declaration is substantively identical to the |
| 21 | Declaration I filed earlier in this action in support of Plaintiff's Application for Order |
| 22 | Authorizing Issuance of A Warrant for Arrest of Defendant Vessel. |
| 23 | 3. This Declaration is submitted in support of PLAINTIFF's Second Application |
| 24 | for Order Authorizing Issuance of Warrant for Arrest, pursuant to Southern District Local |
| 25 | Rules for Admiralty and Maritime Claims, and in conformance with Rule C(3), Supplemental |
| 26 | Rules for Certain Admiralty and Maritime Claims, as amended April 29, 1985, which states: |
| 27 | "[T]he verified complaint and any supporting papers shall be |
| 28 | reviewed by the court and, if the conditions for an action in rem |

1   appear to exist, an order so stating and authorizing a warrant for the
2   arrest of the vessel or other property that is the subject of the action
3   shall issue and be delivered to the clerk who shall prepare the
4   warrant . . . and [it] shall be delivered to the marshal for service."

5   4.   I was instructed to seek the arrest of the DEFENDANT VESSEL, and
6   subsequent satisfaction of PLAINTIFF's its maritime liens, based both on the trespass of the
7   DEFENDANT VESSEL, and on her failure and refusal to pay for wharfage services provided
8   for her benefit. The DEFENDANT VESSEL remains as a trespasser in a slip at
9   PLAINTIFF's marina without contractual or any other legal authority.

10  5.   On August 17, 2007 I caused to be dispatched via Certified U.S. Mail a letter to
11  Mr. Hach, who is believed to be the owner of the DEFENDANT VESSEL. A true and
12  correct copy is hereto attached as Exhibit A. In this letter I notified Mr. Hach of the
13  termination of the wharfage contract for the DEFENDANT VESSEL, effective 34 days
14  following the date of my letter – September 20, 2007. In this letter I also explained the legal
15  fiction indulged in admiralty that a vessel is a (juridical) person, and hence that if the
16  DEFENDANT VESSEL, was not removed by the specified date she would become a
17  trespasser, and could be held accountable by way of a vessel arrest and subsequent
18  interlocutory vessel sale. I also reminded Mr. Hach in this letter that any allegations he might
19  advance concerning claimed damage to his vessel and financial and other misconduct by a
20  marina manager employed by a former owner are not properly addressed by PLAINTIFF, the
21  current owner of the Marina.

22  6.   On the date specified for termination of the wharfage contract (August 20,
23  2007) I contacted Mr. Hach, the owner of the DEFENDANT VESSEL, to inquire as to why
24  she had not been removed from the Marina and in order to ascertain his intentions vis-a-vis
25  removing her from the Marina. Mr. Hach did not agree to remove the DEFENDANT
26  VESSEL. To the contrary, he insisted that if PLAINTIFF did not pay him $50,000 to
27  $70,000, he would sue PLAINTIFF for $1.2 million. He also indicated that he believed that
28  he would be unable to obtain another slip for his vessel, even if improved, "because

Homeland Security will not permit him to move." He seemed to believe that, somehow, PLAINTIFF is responsible for damage Mr. Hach claims his vessel sustained literally years before PLAINTIFF even owned HALF MOON ANCHORAGE, purportedly as the result of misconduct of the marina manager then employed by the former owner of the Marina. Mr. Hach made it clear he was not inclined to sign a new wharfage contract (as is required of all marina tenants) and that he will not move his vessel unless PLAINTIFF paid him tens of thousand of dollars – apparently for damages he believes his vessel sustained long before PLAINTIFF even owned the Marina.

7. The DEFENDANT VESSEL remains at PLAINTIFF's Marina, without its permission or legal authority of any kind.

8. There are no exigent circumstances which would justify execution of an Vessel Arrest Warrant by the Clerk of this Honorable Court under Supplemental Admiralty Rule C(3)(B).

9. In this action PLAINTIFF has applied to be appointed as the Substitute Custodian during the pendency of the action. I am aware of no restriction, either statutorily, in case law or pursuant to the Supplemental Admiralty Rules that prohibits or discourages the appointment of a party to serve as the Substitute Custodian, assuming of course that has the experience, insurance and capability to do so. I have served as counsel for plaintiffs in at least 20 vessel arrest cases (both in the Southern and Central Districts of California) in the past six years during which the plaintiff was appointed as the substitute custodian. This serves the purpose of minimizing *custodia legis* expenses, and hence the purpose of preserving the value of the *res*.

10. If called to testify as to the foregoing matters, I could and would competently so testify.

Executed on January 10, 2008 at San Diego, California.

_____
Philip E. Weiss