WEISS & JONES
Philip E. Weiss, Esq. (No. 152523)
1551 Shelter Island Drive
San Diego, California 92106
Telephone: (619) 225-8884
Facsimile: (619) 225-8801

Attorneys for Plaintiff
Bartell Hotels, a California Limited Partnership,
dba Half Moon Anchorage
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARTELL HOTELS, A California Limited Partnership, dba HALF MOON ANCHORAGE, <br><br> Plaintiff, <br><br> v. <br><br> M/Y CLAIRE IRENE, a 1968 Owens Motor Yacht of Approximately 40-Feet In Length And 11-Feet In Beam, Bearing California D.M.V. Registration No. CF 8646 ED, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*, <br><br> Defendant. | Case No. 07 CV 2097 L (BLM) <br><br> IN ADMIRALTY <br><br> EX PARTE APPLICATION FOR ORDER AUTHORIZING REMOVAL OF CONTAMINATED WATER ABOARD DEFENDANT VESSEL <br><br> F.R.C.P. Supplemental Admiralty Rules C and E. <br><br> 46 U.S.C. Sections 30101-31343 |

**COMES NOW** Plaintiff BARTELL HOTELS, dba HALF MOON ANCHORAGE ("PLAINTIFF") and respectfully applies to this Honorable Court for an Order Authorizing Removal of Contaminated Water Aboard Defendant Vessel.

I.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2007 PLAINTIFF filed its Verified Complaint, seeking the arrest of the Defendant Vessel and her interlocutory auction, in order to satisfy PLAINTIFF's maritime liens, which have arisen as a consequence of the trespass of the Defendant Vessel (following termination

1. of her wharfage contract), and as a result of non-payment of contractually due wharfage fees. This
2. Honorable Court declined to execute the Proposed Orders authorizing the issuance of a warrant for
3. vessel arrest and the appointment of a Substitute Custodian, noting PLAINTIFF had not attached to
4. the Verified Complaint a copy of the wharfage contract at issue, and that it was therefore unable to
5. determine "whether Plaintiff was able to unilaterally termiante [the] contract so as to provide basis
6. for trespass or breach of maritime contract." Nov. 15, 2007 Order at p. 3, lns. 4-8. Accordingly, on
7. November 15, 2007 the Court entered its Order (1) Dismissing Complaint With Leave to Amend and
8. (2) Denying As Moot Applicaitons for Vessel Arrest Warrant and Appointment of Substitute
9. Custodian. In this Order, PLAINTIFF was granted leave to file an Amended Verified Complaint,
10. addressing the concerns specified by the Court in its Order.

11. PLAINTIFF accordingly filed and served its First Amended Verified Complaint on
12. November 26, 2007, together with the associated Application for Order Authorizing Issuance of
13. Warrant for Vessel Arrest and Application for Appointment of Substitute Custodian. This
14. Honorable Court subsequently entered Orders requiring the issuance of a Warrant for Vessel Arrest
15. and appointing PLAINTIFF as the Substitute Custodian of the Defendant Vessel, until further Order
16. of the Court.

17. Pursuant to the Court's Order Appointing Substitute Custodian, the United States Marshal
18. seized the Defendant Vessel and transferred custody over her to PLAINTIFF. This Order requires at
19. Paragraph 4 that the Substitute Custodian (here PLAINTIFF) provide certain specified services for
20. the safekeeping of the DEFENDANT VESSEL, and that "where further action beyond those detailed
21. herein is deemed necessary to preserve the vessel, PLAINTIFF shall advise counsel, so counsel can
22. seek an appropriate Order from the Court." The services specified in the Court's Order Appointing
23. Substitute Custodian does not include dewatering the DEFENDANT VESSEL or removal of water
24. apparently contaminated with petroleum product(s).

25. In connection with its inventory and inspection of the DEFENDANT VESSEL, as required
26. by Paragraph 4 of the Court's Order Appointing Substitute Custodian, PLAINTIFF's Marina
27. Manager, Mr. Brad Oliver, discovered a large amount of oily bilge water in the bottom reaches of the
28. DEFENDANT VESSEL. Declaration of Brad Oliver ("Oliver Decl.") at para. 2. Mr. Oliver has

extensive experience in the maritime arena, including experience in the maintenance, operation, troubleshooting and ordinary repairs to vessels ranging from large cruising sailboats to smaller racing vessels. Oliver Decl. at para. 3. He served as the Dock Master at San Diego Yacht Club, before assuming his duties for PLAINTIFF. Oliver Decl. at para. 3. During this time he has had occasion to dewater at least 100 vessels and has assisted in the containment of spills from vessels. Oliver Decl. at para. _3. Having closely examined the DEFENDANT VESSEL, a wooden vessel (with fiberglass overlay) believed to have been built in 1968, Mr. Oliver has concluded that she is unquestionably in unseaworthy condition, and that due to dry rot in her hull and the fact she has received no apparent maintenance in several years, it is at least conceivable hull fasteners or perhaps a "through hull" (an opening in the hull used to supply water to the engines, to discharge water, etc.) could unexpectedly and suddenly fail and she could develop a leak sink or partially sink. Oliver Decl. at para. 4.

It is estimated that even after Mr. Oliver removed dozens of gallons of contaminated water, approximately 400 gallons remain aboard the DEFENDANT VESSEL. Oliver Decl. at para. 5. The Substitute Custodian (here PLAINTIFF) and PLAINTIFF's counsel are concerned that if the DEFENDANT VESSEL (which is in apparently very poor condition) were to sink, it could result in water pollution and clean up costs amounting to a minimum of tens of thousands of dollars and possibly over one million dollars. Oliver Decl. at para. 6; Declaration of Philip E. Weiss at paragraph 2. Although the DEFENDANT VESSEL does not appear to be actively taking on water, PLAINTIFF, in its capacity as Substitute Custodian and its capacity as a maritime lien holder believes it would be imprudent not to remove the contaminated water, or as much as possible, from the DEFENDANT VESSEL.

PLAINTIFF respectfully urges that this Honorable Court enter an Order permitting the Substitute Custodian to retain the services of Oceanview Marine Services, which is owned by Capt. Tom Folkesson. Capt. Folkesson has informed the Substitute Custodian that he has dewatered several hundred vessels over the course of approximately 17 years, that he has specialized "HAZWOPER" training in the handling and disposal of hazardous materials, and that he is authorized by the County of San Diego to engage in the local handling and disposal of toxic

materials. Oliver Decl. at para. 7. Capt. Folkesson has provided an estimate in the amount of $3,177.84 for him and an assistant to remove and dispose of an estimated 400 gallons of contaminated water from the DEFENDANT VESSEL. A true and correct copy of this estimate is attached as Exhibit A to the Declaration of Brad Oliver. Oliver Decl. at para. 8. To confirm he is authorized to handle hazardous materials, Capt. Folkesson provided Mr. Oliver with a copy of the Permit issued by the County of San Diego Department of Environmental Health, a true and correct copy of which is attached to the Declaration of Brad Oliver as Exhibit B; Oliver Decl. at para. 9.

## II.
## LEGAL ARGUMENT

The Substitute Custodian is required by this Honorable Court's Order Appointing Substitute Custodian to take certain actions to preserve the value of the DEFENDANT VESSEL. This is consistent with the requirements of section 6.3-6.f(4) of the Manual for United States Marshals, reprinted at 2001 A.M.C. 2705. In this case, it is believed that she has little, no or (most likely) negative value, because she is unseaworthy and otherwise in apparently very poor condition, and the costs of rehabilitating her would greatly exceed any value that could reasonably be expected following restoration. Oliver Decl. at para. 10. If the DEFENDANT VESSEL were to sink, or contaminated water was to otherwise escape the confines of the hull, those who cleaned up the contamination would be entitled to maintain a maritime lien against the DEFENDANT VESSEL, as would owners of property "painted" or otherwise damaged by the contaminant. *See, e.g.*, Alyeska Pipeline Service Co. v. Bay Ridge, 509 F. Supp. 1115 (D. Ak. 1981), *dismissed* 703 F.2d 381 (9th Cir. 1982) ( recognizing an *in rem* action in favor of private parties damaged by pollution caused by negligence attributable to a vessel).

A Substitute Custodian may be liable for damages resulting from negligent performance of his duties. Chanter Naval Voisin v. M/Y DAYBREAK, 667 F. Supp. 1563 (S.D. Fla. 1988). Several federal statutes provide for penalties and vests liability for discharges of pollutants into navigable waters. *See, e.g.*, the Federal Water Pollution Control Act of 1990, 33 U.S.C. sections 1251, *et seq.*; the Clear Water Act, 33 U.S.C. sections 1281, *et seq.*; and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. sections 9601, *et seq.*

For instance, any owner or person in charge of a vessel from which oil or other hazardous substance is discharged is subject to a penalty of up to $10,000 per occurrance and a civil peenalty of up to $25,000 per day of violation. 33 U.S.C. section 1321(b)(6). In the light of the apparently poor condition of the DEFENDANT VESSEL and the prospect she could experience a total or partial sinking, the Substitute Custodian is concerned that if the Defendant Vessel were to sink in her slip there would be a spill of contaminated water, that parties would be harmed by such marine casualty, and that injured parties could assert a claim against the Substitute Custodian, were it to fail to seek authority to dewater the DEFENDANT VESSEL. Accordingly PLAINTIFF respectfully requests that this Honorable Court enter an Order Authorizing Removal of Contaminated Water Aboard Defendant Vessel.

The only interested party in this unopposed action is the PLAINTIFF., and hence there is no other interested person or entity upon which to serve notice of the instant Ex Parte Application. This is strictly an *in rem* action. No Answer or other responsive pleading has been filed or served by the vessel owner or any other party within the period prescribed by the Federal Rules of Civil, and accordingly PLAINTIFF intends to file a Request for Entry of Default By Clerk. Further, Supplemental Admiralty Rule C(6)(a) provides that "a person who asserts a right of possession or any ownership interest in [the res] must file a Verified Statement of Right or Interest: (A) within 10 days after the execution of process, or (B) within the time that the Court allows;" no Verified Statement of Right or Interest has been filed or served in this action.

## III

## CONCLUSION

PLAINTIFF intends in the near future to move the Court for an Order for Interlocutory Vessel Sale. Assuming this Order issues, it seems highly likely, given the unseaworthy and generally poor condition of the DEFENDANT VESSEL, as well as the high costs to rehabilitate her, that there will be no interested buyers at the U.S. Marshal Auction, and that PLAINTIFF will hence as a practical matter become unfortunately obliged to purchase the DEFENDANT VESSEL on a credit bid at the auction, as authorized by Local Admiralty Rule E.1c.2. It then will be in a position to dispose of the DEFENDANT VESSEL. This is strictly an *in rem* action; no *in personam* defendant

1  has been named. Therefore, given no monies are likely to be derived from the sale of the
2  DEFENDANT VESSEL, and it is virtually certain that PLAINTIFF (here also the Substitute
3  Custodian) will never recover the costs of dewatering the DEFENDANT VESSEL, or any other costs
4  of suit for that matter. However, as pointed out above, PLAINTIFF believes it is necessary and
5  prudent for it to control its risks as the Court appointed Substitute Custodian, by dewatering the
6  DEFENDANT VESSEL as soon as reasonably possible.

7  For the above reasons, PLAINTIFF respectfully urges that an Order issue authorizing
8  PLAINTIFF to secure the services of Oceanview Marine Services, to dewater the DEFENDANT
9  VESSEL and dispose of the contaminated water as soon as is reasonably possible.

10 Dated: March 7, 2008

11                     Respectfully submitted,

12                     WEISS & JONES

14                     By _____
15                     Philip E. Weiss
                       Attorneys for Plaintiff
                       Bartell Hotels.

EX PARTE APPLICATION FOR ORDER AUTHORIZING REMOVAL                    Page -6-
OF CONTAMINATED WATER ABOARD DEFENDANT VESSEL                         Case No. 07 CV 2097 L (BLM)