1  WEISS & JONES, L.L.P.
   Philip E. Weiss, Esq. (No. 152523)
2  1551 Shelter Island Drive
   San Diego, California 92106
3  Telephone: (619) 225-8884
   Facsimile: (619) 225-8801
4  E-Mail: shiplaw@earthlink.net

5  Attorneys for Plaintiff
   Bartell Hotels, a California Limited Partnership,
6  dba Half Moon Anchorage

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 BARTELL HOTELS, A California Limited          )  Case No. 07 CV 2097 L (BLM)
   Partnership, dba HALF MOON ANCHORAGE,         )
12                                               )  IN ADMIRALTY
                Plaintiff,                       )
13                                               )  MEMORANDUM OF POINTS AND
   v.                                            )  AUTHORITIES IN SUPPORT OF
14                                               )  PLAINTIFF'S APPLICATION
   M/Y CLAIRE IRENE, a 1968 Owens Motor          )  FOR DEFAULT JUDGMENT BY
15 Yacht of Approximately 40-Feet In Length And  )  COURT
   11-Feet In Beam, Bearing California D.M.V.    )
16 Registration No. CF 8646 ED, AND ALL OF       )  F.R.C.P. Admiralty Rules C and E;
   HER ENGINES, TACKLE, ACCESSORIES,             )  Local Adm. Rule E.1.e.2; F.R.C.P. 56
17 EQUIPMENT, FURNISHINGS AND                    )
   APPURTENANCES, *in rem*,                      )  SUBMITTED ON PAPERS
18                                               )  (Oral Arguments Not Requested)
                Defendant.                       )
19                                               )  Judge:      Hon. M. James Lorenz
                                                 )  Courtroom:  14 - 5th Floor
20                                               )  Date:       June 16, 2008
                                                 )  Time:       10:30 a.m.
21 _____        )

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

*Page No.*

I.   **INTRODUCTION AND STATEMENT OF FACTS**                                      1

II.  **LEGAL ARGUMENTS**                                                          6

A.   Judgment By Court is Necessary, Because Taxable Costs Cannot
     Be Determined In Advance of the Interlocutory Sale of the
     Defendant Vessel Standards for Entry of Default Judgment By Court            6

B.   The Standards for Default Judgment Are Met In This Case                      7

C.   The Court Is Property Vested With
     Admiralty Contract and Tort Jurisdiction                                     9

     1. Admiralty Jurisdiction Over Maritime Contracts                           9

     2. Admiralty Jurisdiction Over Maritime Torts                              10

D.   PLAINTIFF Was Contractually Entitled to Receive Payment for
     Wharfage Services It Provided, To Receive Proof of Insurance, To
     Terminate the Wharfage Contract Upon 30 Days' Notice And
     To Require The DEFENDANT VESSEL To Vacate The Marina                       12

E.   The DEFENDANT VESSEL Occupied Slip Space Without Contractual
     Or Other Authority, And Hence Engaged In the Maritime Tort of Trespass     13

F.   Entitlement to and Quantification of Damages                               15

     1. Damages Based on Consequences Flowing From Tort of Trespass            15

     2. Costs of Suit Recoverable Pursuant to Local Rule                        16

     3. Recoverable Transient Wharfage Fees                                     16

     4. Recoverable Transient Wharfage Fees                                     16

     5. Monthly Wharfage Fee Arrearages                                         18

     6. Prejudgment Interest Is Recoverable at 5.0%                             18

F.   Total Damages Recoverable                                                  18

     1. Wharfage Arrearages                                                     18

     2. Guest Vessel Wharfage Fees                                              19

///

///

///

Table of Contents & Authorities for Plaintiff's
Application For Default Judgment By Court                    -ii-                      Page -ii-
                                                                            Case No.07-2097 L (BLM)

| | | Page No. |
|---|---|---|
| 3. *Custodia Legis* Expenses – U.S. Marshal Fees and Substitute Custodian Fees | | 19 |
| 4. Filing Fee | | 20 |
| 5. Attorneys' Fees (Not Requested) | | 20 |
| **III.** | **CONCLUSION** | 20 |

**TABLE OF AUTHORITIES**

**Federal Statutes and Rules**                                                          *Page No.*

United States Constitution Article III, section 2, Clause 1.......................  9

Supplemental Admiralty Rule C(6)(a)(i) .................................................  2

F.R.C.P. 55(b)(1)......................................................................  6

F.R.C.P. 55(b)(2)......................................................................  6

28 U.S.C. Section 1921(a)(1)(E) .......................................................  7

46 U.S.C. Section 31301 ...............................................................  10

46 U.S.C. Section 31301(5)(B) .........................................................  14

**California State Statutes and Rules**

California Civil Code Section 1943 ....................................................  4

California Civil Code Section 3333 ....................................................  15

**Federal Cases**

Action S.A. v. Marc Rich & Co.
   951 F.2d 504, 508 (2nd Cir. 1991).................................................  7

Barwil ASCA v. M/V SAVA
   44 F. Supp. 2d 484, 489 (E.D.N.Y 1999)............................................  16

Cargill, Inc. v. Taylor Towing Service, Inc
   642 F.2d 239 (8th Cir. 1981)......................................................  18

Combs v. Coal & Mineral Management Serv.
   105 F.R.D. 472 (D DC 1984)........................................................  6

Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co.
   303 F.2d 692, 699 (5th Cir. 1962) ................................................  17

Contra, Mammoct Shipping Co. v. MARK TWAIN
   610 F. Supp. 862 (S.D.N.Y. 1985)..................................................  10

Davis v. Fendler
   650 F.2d 1154 (9th Cir. 1981).....................................................  7

Diamond State Tel. Co. v. Atlantic Refining Co.
   205 F.2d 402, 406 (3rd Cir. 1953) ................................................  14

Dundee Cement Co. v. Howard Pipe & Concrete Products
   722 F.2d 1319, 1323 (7th Cir. 1983)...............................................  7

Table of Contents & Authorities for Plaintiff's
Application For Default Judgment By Court                    -iv-                    Page -iv-
                                                                          Case No.07-2097 L (BLM)

*Page No.*

Edinburgh Assurance Co. v. R.L. Burns Corp.
669 F.2d 1259 (9th Cir. 1982)........................................................ 18

Eitel v. McCool
782 F.2d 1470, 1471-1472 (9th Cir. 1986)...................................... 8

Executive Jet Aviation, Inc. v. Cleveland
409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)....................... 11

Ex Parte EASTON
95 U.S. 681 (1877)........................................................................... 2, 9

Ferrous Financial Servs. Co. v. O/S ARCTIC PRODUCER
567 F. Supp. 400 (W.D. Wash. 1983) ............................................. 15

Fireman's Fund Ins. Co. v. M/V DSR ATLANTIC, Etc.,
131 F.2d 1336, 1338 (9th Cir. 1997) ............................................... 13

Foremost Ins. Co. v. Richardson
457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) reh. denied
459 U.S. 899, 103 S.Ct. 198, 74 L.Ed.2d 160 (1982).................... 11

Forteza v. Miller
534 F.2d 415 (1st Cir. 1976).............................................................. 6

Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.
651 F.2d 1096 (5th Cir. 1981)......................................................... 18

Hough v. Western Transp. Co. (The PLYMOUTH)
70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865)..................................... 10

Independent Bulk Transp. v. Vessel "Morania Abaco"
676 F.2d 23, 25 (2d Cir. 1982)......................................................... 18

Ingersoll Milling Mach. Co. v. M/V Bodena
829 F.2d 293, 310 (2d Cir. 1987)..................................................... 18

In re AMOCO CADIZ
1992 A.M.C. 913 (7th Cir. 1992)..................................................... 18

In re Banks' Petition
133 F. Supp. 276 (E.D.N.Y. 1955) .................................................. 14

In re Nichole Trahan
10 F.3d 1190, (5th Cir. 1994)........................................................... 18

Mitsui & Co. v. American Export Lines
636 F.2d 807, 823 (2d Cir. 1981)), cert. denied,
484 U.S. 1042, 108 S. Ct. 774, 98 L. Ed. 2d 860 (1988)................ 18

Morgan Guar. Trust Co. v. Hellenic Lines Ltd., et al.
593 F. Supp. 1004 (S.D.N.Y. 1984)................................................. 16

Table of Contents & Authorities for Plaintiff's
Application For Default Judgment By Court          -v-          Page -v-
Case No.07-2097 L (BLM)

*Page No.*

New York Dock Co. v. The POZNAN
274 U.S. 117, 71 L. Ed. 955, 47 S. Ct. 482 (1927).......................  16

New York Trap Rock Corp., Etc. v. Red Star Towing & Transp. Co.,
172 F. Supp. 638, 644 (S.D.N.Y. 1959) ............................................  14

Reeled Tubing, Inc. v. M/V CHAD G
794 F.2d 1026 (5th Cir. 1986)............................................................  18

Royal Ins. Co. v. America v. Pier 39 Ltd., Partnership
738 F.2d 1035, 1037 (9th Cir. 1984)................................................  10

Selame Assoc. Inc. v. Holiday Inns, Inc.
451 F. Supp. 412 (D. Mass. 1978)....................................................  9

Sisson v. Ruby
497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)..................  10

TeleVideo Systems, Inc. v. Heidenthal
826 F.2d 915, 917 (9th Cir. 1987).....................................................  7

The CHANCELLOR
30 F.2d 227, 228-229 (2nd Cir. 1929) .............................................  14

The CHINA
74 U.S. (Wall.) 53, 68, 19 L.Ed. 67 (1868) ...................................  13

The WESTERN WAVE
77 F.2d 695 (5th Cir. 1935)...............................................................  1, 9

Turner & Blanchard, Inc. v. S.S. EMILIA
322 F.2d 249 (2d Cir. 1963)..............................................................  16

United States v. Central Gulf Lines, Inc.
974 F.2d 621 (5th Cir. 1992)..............................................................  18

**State Cases**

Brown v. Superior Court
34 Cal.2d 559, 212 P.2d 878 (1949) ................................................  17

Church of Christ in Hollywood v. Superior Court
99 Cal. App. 4th 1244, 1252 (2002)................................................  14

Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty
129 Cal. App. 4th 1228, 1264; 29 Cal. Rptr. 3d 521 (2005) ..........  14

Miller v. National Broadcasting Co.
187 Cal. App. 3d 1463, 1477, 232 Cal.Rptr. 668............................  14, 15

Table of Contents & Authorities for Plaintiff's
Application For Default Judgment By Court                -vi-                Page -vi-
                                                                         Case No.07-2097 L (BLM)

*Page No.*

**Treatises and Other Authority**

T. Schoenbaum, Admiralty and Maritime Law
(West Publishing 2004) at section 9-1 .......................................................   14

Table of Contents & Authorities for Plaintiff's
Application For Default Judgment By Court          -vii-          Page -vii-
Case No.07-2097 L (BLM)

1  WEISS & JONES, L.L.P.
   Philip E. Weiss, Esq. (No. 152523)
2  1551 Shelter Island Drive
   San Diego, California 92106
3  Telephone: (619) 225-8884
   Facsimile: (619) 225-8801
4  E-Mail: shiplaw@earthlink.net

5  Attorneys for Plaintiff
   Bartell Hotels, a California Limited Partnership,
6  dba Half Moon Anchorage

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11 BARTELL HOTELS, A California Limited      )   Case No. 07 CV 2097 L (BLM)
   Partnership, dba HALF MOON ANCHORAGE,     )
12                                           )   IN ADMIRALTY
             Plaintiff,                      )
13                                           )   MEMORANDUM OF POINTS AND
   v.                                        )   AUTHORITIES IN SUPPORT OF
14                                           )   PLAINTIFF'S APPLICATION FOR
   M/Y CLAIRE IRENE, a 1968 Owens Motor      )   DEFAULT JUDGMENT BY
15 Yacht of Approximately 40-Feet In Length And )  COURT
   11-Feet In Beam, Bearing California D.M.V.  )
16 Registration No. CF 8646 ED, AND ALL OF   )   F.R.C.P. Admiralty Rules C and E;
   HER ENGINES, TACKLE, ACCESSORIES,         )   Local Adm. Rule E.1.e.2; F.R.C.P. 56
17 EQUIPMENT, FURNISHINGS AND                )
   APPURTENANCES, in rem,                    )   SUBMITTED ON PAPERS
18                                           )   (Oral Arguments Not Requested)
             Defendant.                      )
19                                           )   Judge:      Hon. M. James Lorenz
                                             )   Courtroom:  14 - 5th Floor
20                                           )   Date:       June 16, 2008
                                             )   Time:       10:30 a.m.
21 _____ )

22     **COMES NOW** Plaintiff BARTELL HOTELS, dba HALF MOON ANCHORAGE

23 ("PLAINTIFF") and respectfully submits its Memorandum of Poits and Authorities in

24 Support of its Application for Default Judgment By Court.

25                                    I.

26            **INTRODUCTION AND STATEMENT OF FACTS**

27     This is an action *in rem* to satisfy a maritime lien that exists in favor of PLAINTIFF as

28 a result of its having provided maritime "necessaries" (wharfage services) for the benefit of

1  the DEFENDANT VESSEL, for which services it was not paid. *See, e.g.*, Ex Parte

2  EASTON, 95 U.S. 681 (1877) (recognizing contracts for wharfage services, whether express

3  or implied, give rise to maritime liens); *see also* The WESTERN WAVE, 77 F.2d 695 (5th

4  Cir. 1935). Another maritime lien exists in PLAINTIFF's favor, based on the DEFENDANT

5  VESSEL's tort of trespass. PLAINTIFF here seeks entry of Default Judgment By Court.

6  Entry of Default Judgement by the Clerk is inappropriate, as *custodia legis* expenses are still

7  accruing, and accordingly PLAINTIFF's damages cannot be yet fully quantified.

8      Neither the owner of the DEFENDANT VESSEL nor any other person or entity

9  answered or otherwise responded to PLAINTIFF's Verified Complaint within the period

10  permitted by the Federal Rules of Civil Procedure, and accordingly the Clerk of this

11  Honorable Court has entered a Default against the DEFENDANT VESSEL. Similarly, no

12  person or entity has filed a Verified Statement of Right or Interest in the DEFENDANT

13  VESSEL, as required by Supplemental Admiralty Rule C(6)(a)(i). PLAINTIFF is,

14  accordingly, the lone litigant in this action.

15      PLAINTIFF operates a marina known as "Half Moon Anchorage," which is located at

16  2303 Shelter Island Drive, San Diego, California 92106. The DEFENDANT VESSEL is a

17  30 year old Owens motor yacht of approximately 40 feet in length and 11 feet in beam,

18  named and known as "M/Y CLAIRE IRENE," California D.M.V. (expired) Registration No.

19  CF 8646 ED.   First Amended Verified Complaint for Vessel arrest at para. 3.

20      PLAINTIFF purchased the former owner's interest in Half Moon Anchorage

21  (hereinafter the "Marina") in January, 2007. Declaration of Brad Oliver in Support of

22  Motion for Order for Interlocutory Vessel Sale ("Oliver Decl.") at para. 2. At that time, the

23  DEFENDANT VESSEL had already been there for years, apparently since at least 2001.

24  Oliver Decl. at para. 2. Based on its review of an accounting history relating to the

25  DEFENDANT VESSEL, PLAINTIFF believes and has alleged that since March, 2001, the

26  account for the DEFENDANT VESSEL has been arrears on at least 15 occasions, and that on

27  at least two occasions her owner tendered checks that were returned for want of sufficient

28  funds. Oliver Decl. at para. 3.

1    Mr. Michael J. Ardelt, the General Manager of the Marina prior to the time Plaintiff
2    purchased the former owner's interest in the marina, has informed PLAINTIFF that he has
3    personally seen an Agreement for Wharfage and Docking (the standardized contract used by
4    the Marina's former owner, hereinafter referred to as the "Wharfage Contract") that was
5    signed by the owner of the DEFENDANT VESSEL, Mr. Kurt Hatch; however, he has been
6    unable in spite of his good faith efforts to locate said Agreement or a copy.  *See also*,
7    Declaration of Michael J. Ardelt Concerning Existence of Month-to-Month Contract for
8    Defendant Vessel (at para. 8), on file herein and previously offered in support of
9    PLAINTIFF's (Second) Application for Issuance of Warrant for Vessel Arrest.  An exemplar
10   of the Wharfage Contract is attached both as Exhibit A to the First Amended Verified
11   Complaint, and as Exhibit A to the Declaration of Philip E. Weiss in Support of Motion for
12   Default Judgment By Court, filed contemporaneously herewith; Weiss Decl. at para. 2.
13       It should be noted at the outset that the "Wharfage Contract" is, by its own terms, a
14   month-to-month contract, terminable by either party, as paragraph 2 specifically provides that
15   "Owner understands and agrees that this agreement memorializes a month-to-month contract
16   to provide mooring . . . . [and paragraph 5 provides that] Owner understands and agrees that
17   this agreement may be terminated by either party upon written notice to the other in such a
18   manner so that the other party will receive said notice at least thirty (30) days before said
19   termination."  Exh. A to First Amended Verified Complaint for Vessel Arrest.  Naturally, it
20   also requires that the DEFENDANT VESSEL and her owner to timely tender monthly
21   payments for wharfage and other maritime services.  PLAINTIFF alleges in this action that
22   the DEFENDANT VESSEL failed to perform this duty of payment.
23       Even if Mr. Hach did not sign the Wharfage Contract, an implied freely terminable
24   month-to-month wharfage contract would nevertheless have existed between PLAINTIFF on
25   the one hand and the DEFENDANT VESSEL and her owner on the other hand, as a well
26   defined controlling industry standard exists within the Port of San Diego among privately
27   operated marinas, pursuant to which marinas enter into freely terminable month-to-month
28   wharfage contracts, rather than long term wharfage contracts.  Weiss Decl. at para. 3.  What

1  is more, even if no controlling industry standard existed (and PLAINTIFF is unaware of any

2  evidence to suggest this), a freely terminable implied wharfage contract on month-to-month

3  terms nevertheless exists between PLAINTIFF on the one hand and the DEFENDANT

4  VESSEL and her owner on the other hand, since California Civil Code Section 1943

5  provides that "[a] hiring of real property, other than lodgings and dwelling-houses, in places

6  where there is no custom or usage on the subject, is presumed to be a month-to-month

7  tenancy unless otherwise designated in writing . . . ."

8      After it purchased the Marina, in order to control risk and liability and for other

9  business reasons, PLAINTIFF carefully reviewed the existing circumstances and procedures

10  at the Marina and decided to make certain improvements and changes. Oliver Decl. at para.

11  4. This included examining the vessels at the Marina in order to generally evaluate their

12  condition, verifying that all vessels located at the Marina were insured, and preparing a new

13  wharfage contract for review and execution by vessel owners. Oliver Decl. at para. 4. It

14  appeared, upon PLAINTIFF's examination, that the DEFENDANT VESSEL was (as she still

15  is) in demonstrably poor, unseaworthy condition, exhibiting evidence of dry rot, years of

16  growth on her bottom, blistering and peeling paint, with debris scattered aboard. Oliver

17  Decl. at para. 4. In fact, during the pendency of this action it became necessary for

18  PLAINTIFF to request an Order from this Honorable Court permitting it, in its capacity as

19  Substitute Custodian, to arrange for the dewatering of the DEFENDANT VESSEL and

20  disposal of contaminated water. The requested Order issued.

21      PLAINTIFF requested that all vessel owners for whom PLAINTIFF did not have

22  current evidence of vessel insurance, provide such evidence. Oliver Decl. at para. 5.

23  PLAINTIFF also requested that vessel owners review and execute a new wharfage contract.

24  Oliver Decl. at para. 5. Although a few boat owners failed to provide the requested proof of

25  insurance or declined to execute the new wharfage contract and hence moved their vessels to

26  other locations, the vast majority of boat owners complied with these requests, did not

27  exercise their right to terminate their wharfage contracts, and they remain today at the Marina

28  as tenants in good standing. Oliver Decl. at para. 5. After it purchased the leasehold

1  PLAINTIFF also dispatched a form letter to all vessel owners, including Mr. Hach, notifying

2  them they were free to pick up a new Marina gate access card at the Marina Office.  Oliver

3  Decl. at para. 5.  Mr. Hach never retrieved a new gate access card at the Marina Office.

4  Oliver Decl. at para. 5.  Mr. Hach also *never provided the requested proof of insurance*.

5  Oliver Decl. at para. 5.

6        As a consequence of the poor condition of the DEFENDANT VESSEL, her

7  continuing lack of any maintenance whatever, and her owner's refusal to both provide proof

8  of insurance and to execute a new wharfage contract, PLAINTIFF became compelled to

9  terminate the wharfage contract for the DEFENDANT VESSEL. Accordingly, on August 17,

10  2007 PLAINTIFF's counsel dispatched a letter via Certified U.S. Mail to Mr. Hach, in which

11  he was advised of the termination of his vessel's wharfage contract, effective 34 days from

12  the date of the letter – on September 20, 2007.  A true and correct copy is attached as Exhibit

13  B to the Declaration of Philip E. Weiss in Support of Application for Default Judgment By

14  Court, filed contemporaneously herewith; Weiss Decl. at para. 4.  This letter also explained

15  the legal fiction indulged in admiralty that a vessel is a (juridical) person, and that

16  accordingly if the DEFENDANT VESSEL was not removed by the specified date she would

17  become a trespasser, and could be held accountable by way of a vessel arrest and subsequent

18  interlocutory vessel sale.  It also reminded Mr. Hach that any allegations he advanced

19  concerning claimed damage to his vessel and financial and other misconduct by a marina

20  manager employed by a <u>former</u> owner[1]/ are not properly addressed by PLAINTIFF, the

21  current owner of the Marina.

22        On the date specified for termination of the wharfage contract (August 20, 2007)

23  PLAINTIFF's counsel contacted Mr. Hach, the owner of the DEFENDANT VESSEL, to

24  inquire as to why the DEFENDANT VESSEL had not been removed from the Marina, and in

25

26  [1]/ It is believed that a Marina Manager employed by the entity that owned the marina prior to
    PLAINTIFF purchasing it (Ms. Ann Miller) was terminated and prosecuted in connection with her
27  scheme to divert to herself wharfage fees and other monies that were due to her employer.
    PLAINTIFF has no way of knowing whether the owner of the DEFENDANT VESSEL, Mr. Hach
28  was a victim of Ms. Miller's misconduct, which occurred prior to the time PLAINTIFF owned the
    marina. Weiss Decl. at para. 5.

POINTS AND AUTHORITIES IN SUPPORT OF                                    Page -5-
APPLICATION FOR DEFAULT JUDGMENT BY COURT                    Case No. 07 CV 2097 L (BLM)

order to ascertain his intentions vis-a-vis removing her from the Marina.  Weiss Decl. at para. 6.  Mr. Hach did not agree to remove the DEFENDANT VESSEL.  To the contrary, he insisted that if PLAINTIFF did not pay him $50,000 to $70,000, (apparently for "damages" he believes his vessel sustained as a result of claimed misconduct by a Marina Manager, who was employed by the former owner of the marina), he would "sue PLAINTIFF for $1.2 million."  Weiss Decl. at para. 6.  He also indicated that he believed that he would be unable to obtain another slip for his vessel, even if approved, "because Homeland Security will not permit him to move."  Weiss Decl. at para. 7.  PLAINTIFF is unaware of any restriction imposed by "Homeland Security" that would prevent or inhibit a boat owner from moving his or her vessel to a new berthing location.  Weiss Decl. at para. 7.

There being no alternative, PLAINTIFF became compelled to seek the assistance of this Honorable Court to vindicate its property and admiralty rights.

## II

## LEGAL ARGUMENTS

PLAINTIFF brought this admiralty action *in rem* pursuant to (among other authority) Supplemental Admiralty Rules C and E of the Federal Rules of Civil Procedure, after the owner of the DEFENDANT VESSEL:  failed to pay wharfage fees due for accommodations provided for the benefit of the DEFENDANT VESSEL; failed to provide evidence of insurance on the 40 year old vessel; and failed to remove her from the marina following termination of the Wharfage Contract.

A.    **Judgment By Court is Necessary, Because Taxable Costs Cannot Be Determined In Advance of the Interlocutory Sale of the Defendant Vessel.**

In all cases where the requirements for a clerk-entered default judgment cannot be met, the Plaintiff must apply to the Court to obtain a default judgment.  F.R.C.P. 55(b)(2); Forteza v. Mills, 534 F.2d 415 (1st Cir. 1976).  Given that a Court Clerk is vested with no discretion in entering a default judgment, the amount due must either be fixed or determinable by simple computation.  F.R.C.P. 55(b)(1); Combs Coal & Mineral Mgmt. Serv., 105 F.R.D. 472 (D.DC 1984).  At this juncture, damages cannot be fixed or

1  determined, because PLAINTIFF is entitled to recover as part of its damages its "costs" of

2  suit, including *custodia legis* expenses, and these damages cannot be ascertained before the

3  duties of the U.S. Marshal and the Substitute Custodian are terminated (following anticipated

4  interlocutory auction of the vessel and confirmation of the sale).  Section 1921(a)(1)(E) of

5  Title 28 of the United States Code provides that a court may tax as costs "the keeping of

6  attached property (including boats, vessels or other property attached or libeled), actual

7  expenses incurred, such as storage, moving, boat hire or other special transportation,

8  watchmen's or keepers' fees . . . ."

9       The *custodia legis* expenses (U.S. Marshal fees and Substitute Custodian fees) are still

10  accruing, and will continue to accrue until the DEFENDANT VESSEL is either released

11  from custody or she is sold at interlocutory auction by the U.S. Marshal.  There exists no

12  indication anyone has any interest in the DEFENDANT VESSEL (no one has appeared in

13  this action to stake an ownership or other interest in her), so it seems extremely unlikely

14  anyone will seek the release of the DEFENDANT VESSEL, which is in very poor condition.

15  Therefore, until the vessel is sold at public auction pursuant to Order of this Honorable

16  Court, *custodia legis* expenses will continue to accrue, and PLAINTIFF's damages will not

17  until such time be made final and certain, such that the Clerk of the Court would be

18  empowered to enter Judgment.

19       **B.    The Standards For Default Judgment Are Met In this Case.**

20       In connection with a plaintiff's application for entry of judgment by the Court, the

21  Court is vested with authority to base its judgment entirely on the affidavits submitted.  *See,*

22  *e.g.,* Davis v. Fendler, 650 F.2d 1154 (9th Cir. 1981); and Action S.A. v. Marc Rich & Co.,

23  951 F.2d 504, 508 (2nd Cir. 1991).   Ordinarily, entry of default establishes the liability of the

24  defendant(s), as "upon default, the well-pleaded allegations of the complaint relating to

25  liability are taken as true" (though not allegations as to the *quantum* of damages).  *See,*

26  Dundee Cement Co. v. Howard Pipe & Concrete Products, 722 F.2d 1319, 1323 (7th Cir.

27  1983); and TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

28  Damages, too, may properly be established by way of declarations or affidavits.

1    In determining whether to grant a default judgment, Courts often consider several

2    factors, including: (1) the substantive merits of the plaintiff's claims; (2) the sufficiency of

3    the Complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the

4    plaintiff if relief is denied; (5) the possibility of dispute as to any material facts in the case;

5    (6) whether the default resulted from excusable neglect; and (7) the public policy favoring

6    decisions on the merits. <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). Plaintiff

7    respectfully suggests that each of these factors favors entry of Default Judgment.

8    As explained above, the owner of the DEFENDANT VESSEL allowed her to

9    deteriorate into a clearly unseaworthy condition, to the point where she required dewatering

10    during the pendency of this action pursuant to Court Order. He failed to provided requested

11    evidence of insurance, or to pay wharfage fee arrearages. Instead, he effectively abandoned

12    his derelict vessel at PLAINTIFF's marina, rather than incurring the expense of hauling the

13    DEFENDANT VESSEL from the water for either substantial work or (more practically)

14    disposal.

15    The merits of PLAINTIFF's claim are clear, precise and well supported. The First

16    Amended Verified Complaint states viable Counts in admiralty against the DEFENDANT

17    VESSEL based on her trespass arising from her failure to vacate the marina after termination

18    of the Wharfage Contract (Verified Complaint at 4:4-7:12), and her failure to satisfy

19    PLAINTIFF's maritime "necessaries" lien arising from PLAINTIFF's provision of wharfage

20    services (Verified Complaint at 7:22-8:14). To vindicate its rights has costs PLAINTIFF

21    several thousands of dollars in attorneys' fees and costs of suit. It respectfully suggests that

22    no reason in logic or law exists not to enter judgment at this.

23    The material facts are plain and supported by ample evidence that is beyond

24    reasonable question. The vessel owner was properly served with process and both the

25    original and the First Amended Verified Complaint in this action; for unknown reasons he

26    elected not to appear to file a claim of ownership interest in the DEFENDANT VESSEL or

27    to file an Answer to Complaint or other responsive pleading. The merits of PLAINTIFF's

28    claims are manifest. The DEFENDANT VESSEL failed to pay wharfage fees, giving rise to

1   a maritime "necessaries" lien against her. Likewise, it is indisputable that she failed to vacate

2   following termination of her Wharfage Contract, and that, until she was arrested pursuant to

3   Order of this Court, she occupied a slip in the capacity of a trespasser, which gives rise to an

4   independent tort lien against the offending vessel. Though enormously important property

5   rights are implicated, when contrasted with many cases that are before this Court, the

6   monetary claim against the DEFENDANT VESSEL is comparatively modest (less than

7   $10,000 in wharfage arrearages, plus the "costs" of arrest). This is a "no win" case for

8   PLAINTIFF, what ever the outcome. This is because the DEFENDANT VESSEL is in such

9   poor condition that she is unlikely to sell at public auction (assuming the Court Orders one),

10  so there will be no funds (substitute res) with which to satisfy PLAINTIFF's claims, and,

11  worse yet, PLAINTIFF will likely become compelled to purchase the DEFENDANT

12  VESSEL on a credit bid (assuming the Court permits it) and arrange for her disposal (at a

13  further cost of thousands of dollars). Any delay in resolution of this case enures to

14  PLAINTIFF's clear detriment. PLAINTIFF respectfully suggests that all of the factors

15  Courts generally consider in connection with an Application for Entry of Judgment by Court

16  weigh in favor of granting judgment at this time, and that none weigh against such a decision.

17       **C.    The Court Is Property Vested With Admiralty Contract and Tort**

18             **Jurisdiction.**

19             **1. Admiralty Jurisdiction Over Maritime Contracts.**

20       Article III, section 2, Clause 1 of the United States Constitution grants to Federal Courts

21  to be created by Congress judicial power over cases of "admiralty and maritime" jurisdiction.

22  In general terms, admiralty has jurisdiction over all disputes arising under contracts concerning

23  navigation of vessels or water commerce, or whereby goods or services are to be provided to

24  ships engaged in water commence. Contracts to provide wharfage services (*i.e., berthing*

25  *accommodations)* for a vessel is without, question, a maritime contract. *See, e.g.*, Ex Parte

26  EASTON, 95 U.S. 681 (1877) (recognizing that contracts for wharfage, *whether express or*

27  *implied*, give rise to maritime liens); The WESTERN WAVE, 77 F.2d 695 (5th Cir. 1935) (so

28  recognizing); Selame Assoc. Inc. v. Holiday Inns, Inc., 451 F. Supp. 412 (D. Mass. 1978)

1   (contracts for wharfage are maritime contracts); <u>Contra, Mammoct Shipping Co. v. MARK</u>

2   <u>TWAIN</u>, 610 F. Supp. 862 (S.D.N.Y. 1985) (contracts for wharfage are maritime contracts); and

3   46 U.S.C. section 31307, (the Commercial Instruments and Federal Maritime Lien Act) notes

4   46 and 47.  There can be no legitimate doubt  that a contract for the provision of wharfage

5   services, such as is at issue here, is property the subject of admiralty jurisdiction. *See, e.g.*, <u>Royal</u>

6   <u>Ins. Co. v. America v. Pier 39 Ltd., Partnership</u>, 738 F.2d 1035, 1037 (9th Cir. 1984) ("wharfage

7   contracts are maritime if wharfage is provided to a specific vessel").

8          PLAINTIFF's First Amended Verified Complaint states a Count for Breach of Contract

9   For Necessaries, based on the DEFENDANT VESSEL's failure to wharfage fee arrearages in

10  the amount of $1,929.60 that had accrued by the date the Wharfage Contract terminated (on

11  September 21, 2007), and also the DEFENDANT VESSEL's failure to pay transient wharfage

12  fees accruing after the date the Wharfage Contract terminated.  Oliver Decl. at para. 6.  It is

13  PLAINTIFF's usual and customary practice to charge "transient vessels" (*i.e.*, those without an

14  existing Wharfage Contract staying for a short period and interloping vessels) wharfage fees

15  calculated at the rate of $1.50 per foot of vessel length per day, or $60.00 per day for the

16  DEFENDANT VESSEL (*i.e.*, 40 feet X $1.50 = $60).  Oliver Decl. at para. 7.  It is believed that

17  it is a uniform practice in San Diego's marina industry to charge a transient rate calculated in the

18  above manner, though it is known that at least some other marinas charge a rate higher than

19  $1.50 per foot per day.  Oliver Decl. at para. 7; Weiss Decl. at para. 8.

20         The DEFENDANT VESSEL had a legal obligation to pay wharfage fees, but failed to do

21  so, thus giving rise to the filing of the instant action.  The contract for wharfage at issue is,

22  without a scintilla of reasonable doubt, a maritime contract, the alleged breach of which properly

23  gives rise to this Honorable Court's admiralty contract jurisdiction, and PLAINTIFF's

24  entitlement to recover damages.

25         **2. <u>Admiralty Jurisdiction Over Maritime Torts</u>.**

26         Supreme Court long ago confirmed that: "*Every species of tort*, however occurring, and

27  whether on board a vessel or not, if upon the high seas or navigable waters, *is of admiralty*

28  *cognizance*. <u>Hough v. Western Transp. Co. (The PLYMOUTH)</u>, 70 U.S. (3 Wall.) 20, 18 L.Ed.

1  125 (1865) (*emphasis added*). Over the years this pure locality test for admiralty tort jurisdiction

2  has been modified by subsequent Supreme Court decisions. In Executive Jet Aviation, Inc. v.

3  Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) the Supreme Court added another

4  prerequisite for admiralty tort jurisdiction – that "the wrong bear a significant relationship to a

5  traditional maritime activity." *Id.* It is evident that the provision of wharfage accommodations

6  for vessels constitutes a "traditional maritime activity," and that the wrong (the tort of trespass

7  by the DEFENDANT VESSEL) is significantly, in fact inextricably, related to such traditional

8  maritime activity – the provision of wharfage services.

9      The Supreme Court further developed the "traditional maritime activity" factor in

10  Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982)

11  *rehearing denied* 459 U.S. 899, 103 S.Ct. 198, 74 L.Ed.2d 160 (1982), a case involving a

12  collision of two pleasure yachts. In the Foremost case the Court rejected the argument that

13  "traditional maritime activity" means *commercial* activity. Finally, in 1990 the United States

14  Supreme Court again considered the issue of admiralty tort jurisdiction in Sisson v. Ruby, 497

15  U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). The Supreme Court in this case clarified that

16  it is not necessary that the type of wrong involved (here the trespass of a vessel at a wharf)

17  directly impact maritime commerce  – a *potential* impact is sufficient.

18      It is obvious that the type of tort here involved, trespass by a vessel, could potentially have

19  a significant adverse impact on maritime commerce. For example, if vessels were permitted to

20  berth where they please, even after permission has been denied, such tortious conduct would (as

21  here) directly interfere with the wharfinger's ability to conduct business and to provide

22  accommodations to both commercial and recreational vessels. Such trespass could also interfere

23  with navigation and commerce, due to an inability of commercial and other vessels to berth at

24  slips and wharfs occupied by trespassing vessels. In this case, the trespass actually and directly

25  interferes with PLAINTIFF's maritime business, because PLAINTIFF is being actively

26  prevented from using the space occupied by the DEFENDANT VESSEL. In view of the above

27  ///

28  ///

1  standard, and the personification of a vessel recognized in admiralty, it is hardly surprising that

2  (as detailed below), the tort of trespass in not a stranger in admiralty.

3    **D.    PLAINTIFF Was Contractually Entitled to Receive Payment for**
           **Wharfage Services It Provided, To Receive Proof of Insurance, To**
4          **Terminate the Wharfage Contract Upon 30 Days' Notice And**
           **To Require The DEFENDANT VESSEL To Vacate The Marina.**
5

6          As pointed out above, the "Wharfage Contract" is, by its own terms, a month-to-month

7  contract, terminable by either party, as paragraph 2 specifically provides that "Owner

8  understands and agrees that this agreement memorializes a month-to-month contract to provide

9  mooring . . . . [and paragraph 5 provides that] Owner understands and agrees that this agreement

10 may be terminated by either party upon written notice to the other in such a manner so that the

11 other party will receive said notice at least thirty (30) days before said termination." Exh. A to

12 Weiss Decl. Naturally, it also requires that the DEFENDANT VESSEL and her owner to timely

13 tender monthly payments for wharfage and other maritime services; PLAINTIFF alleges in this

14 action the DEFENDANT VESSEL failed to perform this duty of payment.

15         Even if Mr. Hach did not sign the Wharfage Contract, an implied freely terminable

16 month-to-month wharfage contract would nevertheless have existed between PLAINTIFF on the

17 one hand and the DEFENDANT VESSEL and her owner on the other hand, as a well defined

18 controlling industry standard exists within the Port of San Diego among privately operated

19 marinas, pursuant to which marinas enter into freely terminable month-to-month wharfage

20 contracts, rather than long term wharfage contracts. Declaration of Philip E. Weiss at para. 3.

21 What is more, even if no controlling industry standard existed (and PLAINTIFF is unaware of

22 any evidence to suggest this), a freely terminable implied wharfage contract on month-to-month

23 terms nevertheless exists between PLAINTIFF on the one hand and the DEFENDANT VESSEL

24 and her owner on the other hand, since California Civil Code Section 1943 provides that "[a]

25 hiring of real property, other than lodgings and dwelling-houses, in places where there is no

26 custom or usage on the subject, is *presumed* to be a month-to-month tenancy unless otherwise

27 designated in writing . . . ." (Id., emphasis added).

28 ///

1    Paragraph 3 of the Wharfage contract requires that wharfage fees be paid "in advance on

2    the first of each month." Few terms could be more material to any contract than the obligation

3    to pay. At the time the Wharfage Contract terminated the DEFENDANT VESSEL's account

4    stood in arrears in the amount of $1,929.60, and she subsequently failed to pay transient

5    wharfage fees accruing after the date the Wharfage Contract terminated, at the usual and

6    customary rate of $1.50 per foot of vessel length per day. Oliver Decl. at para. 6-7; Exh. A to

7    Oliver Decl. (accounting detailing arrearages at time of Wharfage Contract termination, and

8    transient wharfage fees accrued thereafter, until vessel arrest). The DEFENDANT VESSEL's

9    failure to pay wharfage fees constitutes a breach of the contractual duty to pay for the services

10   provided for her benefit.

11   In addition, as pointed out above, the DEFENDANT VESSEL (by and through her

12   owner) refused to provide evidence of the insurance required by Paragraph 18 of the Wharfage

13   Contract, although this Paragraph specifically requires that proof of the required insurance be

14   provided "upon request" Oliver Decl. at para. 5.   This failure constitutes an obvious and

15   additional breach of the Wharfage Contract.

16   **E.      The DEFENDANT VESSEL Occupied Slip Space Without Contractual**

17   **Or Other Authority, And Hence Engaged In the Maritime Tort of Trespass.**

18   Admiralty courts have long recognized the legal fiction a vessel is a person, and hence

19   that they are responsible for both their debts and torts. Consistent with this, the Ninth Circuit

20   has observed: "The right to proceed *in rem* – based on the legal fiction of vessel as wrongdoer

21   – certainly has a long and important history. Fireman's Fund Ins. Co. v. M/V DSR ATLANTIC,

22   Etc., 131 F.2d 1336, 1338 (9th Cir. 1997); *see also* The CHINA, 74 U.S. (Wall.) 53, 68, 19 L.Ed.

23   67 (1868) (maritime lien arises against vessel based on tort of collision, recognizing legal

24   concept dating to "middle ages" of responsibility of a vessel for her torts). Professor Thomas

25   Schoenbaum, the author of perhaps the most widely recognized maritime law treatise has

26   commented: "The theoretical basis of the maritime lien goes to the heart of all that is distinctive

27   about admiralty law: it is a right based upon the legal fiction that the ship is the wrongdoer – the

28   ship itself caused the loss and can be called to the bar to make good the loss." T. Schoenbaum,

1  Admiralty and Maritime Law (West Publishing 2004) at section 9-1.

2      The legal concept of trespass by a vessel is not a stranger to admiralty cases. *See, e.g.,*

3  The CHANCELLOR, 30 F.2d 227, 228-229 (2nd Cir. 1929) (defendant vessel recognized as "a

4  trespasser," where she "occupied a berth . . . without right or permission [of the wharfinger"]);

5  Diamond State Tel. Co. v. Atlantic Refining Co., 205 F.2d 402, 406 (3rd Cir. 1953) (cable in

6  river not held to be "trespasser"); and New York Trap Rock Corp., Etc. v. Red Star Towing &

7  Transp. Co., 172 F. Supp. 638, 644 (S.D.N.Y. 1959) (observing in case where vessel moored

8  without permission and damaged owner's dock that in various cases the concept of trespass

9  arising out of an unauthorized entry upon or use of property of another is recognized in

10 admiralty); and In re Banks' Petition, 133 F. Supp. 276 (E.D.N.Y. 1955) (owner liable for dock

11 damage by trespassing vessel). Not surprisingly, holding a vessel accountable for her torts is

12 also a principle embodied statutorily. The Commercial Instruments and Federal Maritime Lien

13 Act specifically recognizes damages arising from maritime torts as giving rise to a "preferred

14 maritime lien. 46 U.S.C. section 31301(5)(B) (defining "preferred maritime line" to include

15 "damages arising out of maritime tort.")

16     It is well established that the "essence of the cause of action for trespass is an

17 unauthorized entry onto the land of another. Such invasions are characterized as intentional torts,

18 regardless of the actor's motivation." Miller v. National Broadcasting Co., 187 Cal. App. 3d

19 1463, 1477, 232 Cal.Rptr. 668 (1986); *see also* Huntingdon Life Sciences, Inc. v. Stop

20 Huntingdon Animal Cruelty, 129 Cal. App. 4th 1228, 1264; 29 Cal. Rptr. 3d 521 (2005),

21 ("essence of the cause of action for trespass is an 'unauthorized entry'") Church of Christ in

22 Hollywood v. Superior Court, 99 Cal. App. 4th 1244, 1252 (2002) (so holding).

23     The intent required "as a basis for liability as a trespasser is simply an intent to be at the

24 place on the land where the trespass allegedly occurred." Miller at 1477. The defendant "is

25 liable for an intentional entry although he has acted in good faith, under the mistaken belief,

26 however reasonable, that he is committing no wrong." *Id.*

27     It is respectfully suggested that the DEFENDANT VESSEL, by occupying space at

28 PLAINTIFF's marina following termination of the applicable wharfage contract, has committed

1   the maritime tort of trespass, which act, under both the General Maritime Law and the

2   Commercial Instruments and Federal Maritime Lien Act, gives rise to a maritime lien and a right

3   to recovery of damages that is enforceable *in rem* in admiralty.  After the DEFENDANT

4   VESSEL is (presumably) disposed of at interlocutory auction, any proceeds would become a

5   substitute *res*, against which PLAINTIFF would become entitled to recovery to the same extent

6   as its former entitlement against the offending vessel. *See,* Ferrous Financial Servs. Co. v. O/S

7   ARCTIC PRODUCER, 567 F. Supp. 400 (W.D. Wash. 1983) (auction proceeds become

8   substitute *res* for a Defendant Vessel).

9       **F.    Entitlement to and Quantification of Damages.**

10          **1. Damages Based on Consequences Flowing From Tort of Trespass**

11          California Civil Code section 3333 provides the statutory measure for damages in tort

12   actions:

13              "For the breach of an obligation not arising from contract, the
                measure of damages, except where otherwise expressly provided by
14              this code, is the amount which will compensate for all the detriment
                proximately caused thereby, whether it could have been anticipated
15              or not . . . ."

16   In recognition of the seriousness of the tort of trespass and the adverse implications of this tort,

17   many cases have applied this broad measure of damages in providing for recovery based not only

18   the direct consequences of the trespass, but also on the indirect consequences, including even

19   ones not reasonably foreseeable . *See, e.g.,* Miller v. National Broadcasting, *supra* at 1477

20   (holding a trespasser is "liable for all direct consequences of any conduct engaged in while

21   trespassing [and that] frequently the defendant is held liable for indirect consequences, some of

22   which are not reasonably foreseeable, of conduct engaged in while trespassing." The Miller

23   Court reasoned that it "is important to realize that those who use another's land without

24   permission may justifiably have risks of losses allocated to them far beyond those normally

25   imposed when liability is imposed on a negligence theory." *Id.*  The fact that an abandoned

26   vessel would be arrested, and that the aggrieved property owner would have to expend

27   substantial resources to press such remedy, was entirely foreseeable, and (as pointed out above)

28   even it if was not foreseeable, the associated costs of suit (including *custodia legis* expenses)

1 would still be recoverable. It was equally foreseeable (but again not required) that transient (or
2 "guest") fees would be charged for a vessel that occupies a slip without permission of any kind,
3 particularly where, as here, the Wharfage Contract specifies that a "guest" fee will be charged.
4 　　　　Accordingly, PLAINTIFF respectfully urges that in view of the trespass occurring in this
5 case, any judgment entered by this Honorable Court include "transient" fees accruing after the
6 date of termination of the Wharfage Contract (until the vessel arrest date), plus all reasonable
7 costs of suit, including *custodia legis expenses*. PLAINTIFF acknowledges that, as a general
8 matter, attorneys' services incurred in pursuing a maritime necessaries lien (such as is asserted
9 in this action) do not give rise to or enhance an existing maritime lien. Accordingly, while it
10 seeks "costs" of suit, PLAINTIFF does not seek recovery in this action of attorneys' fees, and
11 hereby abandons any in rem claim for recovery of attorneys' fees.

12 　　　　**2.　　Costs of Suit Recoverable Pursuant to Local Rule.**

13 　　　　"Unless otherwise ordered by the court, or stipulated by the parties, the prevailing party
14 shall be entitled to costs." Local Civil Rule 54.1a. Services or property advanced to preserve
15 and maintain an arrested vessel, furnished upon authority of the court, are unquestionably cost
16 that are allowable as *custodia legis expenses*. *See generally,* New York Dock Co. v. The
17 POZNAN, 274 U.S. 117, 71 L. Ed. 955, 47 S. Ct. 482 (1927); Turner & Blanchard, Inc. v. S.S.
18 EMILIA, 322 F.2d 249 (2d Cir. 1963); Morgan Guar. Trust Co. v. Hellenic Lines Ltd., et al., 593
19 F. Supp. 1004 (S.D.N.Y. 1984), and Barwil ASCA v. M/V SAVA, 44 F. Supp. 2d 484, 489
20 (E.D.N.Y 1999) (granting motion for reimbursement of *custodia legis* expenses).

21 　　　　**3.　　Recoverable Transient Wharfage Fees**.

22 　　　　As above explained, it is a well established industry practice for marinas to charge a
23 "guest" or "transient" wharfage fee for vessels that either do not have an existing month-to-
24 month wharfage contract in place and where the intention is for the vessel to occupy a slip for
25 a short period, or where a vessel without permission to do so occupies space at a marina. Oliver
26 Decl. at para. 7; Weiss Decl. at para. 8. When the DEFENDANT VESSEL refused to vacate the
27 marina following termination of any contractual authority to remain, she deprived PLAINTIFF
28 of the ability to lease the slip to another (paying) vessel. Surely it was the expectation of the

1   parties that the vessel would leave following termination of the Wharfage Contract, and that if

2   she remained without authority wharfage fees for such interloping vessel would be calculated

3   (at a minimum) at the customary "guest" or "transient" rate. The term requiring a vessel to leave

4   the marina after terminating a wharfage contract is one of necessary implication.

5           It is axiomatic that in every contract, whether written, oral or implied, there exists an

6   implied covenant of good faith and fair dealing that neither party will do anything which impairs

7   the right of the other to receive the benefits of the agreement. Brown v. Superior Court, 34

8   Cal.2d 559, 564, 212 P.2d 878 (1949). A key benefit of the contract, which was freely

9   terminable by both parties, was the ability to simply extricate an unsatisfied party from

10  contractual obligations. If a vessel owner is dissatisfied with PLAINTIFF's marina for any

11  reason, he or she cannot reasonably or in good faith deprived of his or her right to simply

12  terminate the contract and move the vessel elsewhere. Conversely, the DEFENDANT

13  VESSEL's continued presence at the marina following termination of any contractual right to

14  remain deprived PLAINTIFF of a significant benefit of its bargain – the right to require a vessel

15  to leave by simply providing 30 or more days advance notice.

16          As this Honorable Court sits in equity in this admiralty action, such an award is well

17  within its authority. Judge John Brown of the Fifth Circuit Court of Appeals described the role

18  of a Federal District Court Judge sitting in Admiralty in his own unique way: "The Chancellor

19  is no longer fixed to the woolsack. He may stride the quarter-deck of maritime jurisprudence and,

20  in the role of admiralty judge, dispense, as would his landlocked brother, *that which equity and*

21  *good conscience impels*." Compania Anonima Venezolana De Navegacion v. A. J. Perez Export

22  Co., 303 F.2d 692, 699 (5th Cir. 1962) (emphasis added).

23          Obviously no one would expect that a trespassing vessel can avail itself of the preferential

24  wharfage rates that are provided to vessels under existing and binding written wharfage

25  contracts. PLAINTIFF respectfully urges that this Honorable Court award damages to include

26  transient wharfage fees for the period between the termination date of the Wharfage Contract and

27  the date the U.S. Marshal arrested the DEFENDANT VESSEL.

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.    Monthly Wharfage Fee Arrearages

On the date of the termination of the Wharfage Contract on September 7, 2006 the account was in arrears in an amount of$1,929.60.  No part of this sum has been paid.

### 5.    Prejudgment Interest Is Recoverable at 5.0%

In admiralty cases, "prejudgment interest 'should be granted in the absence of exceptional circumstances.'"  *See, e.g.*, Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 310 (2d Cir. 1987) (*quoting* Mitsui & Co. v. American Export Lines, 636 F.2d 807, 823 (2d Cir. 1981)), *cert. denied*, 484 U.S. 1042, 108 S. Ct. 774, 98 L. Ed. 2d 860 (1988); Independent Bulk Transp. v. Vessel "Morania Abaco," 676 F.2d 23, 25 (2d Cir. 1982); Reeled Tubing, Inc. v. M/V CHAD G, 794 F.2d 1026 (5th Cir. 1986) (interest is awarded in admiralty absent "peculiar circumstances").

The Courts enjoy broad discretion in setting prejudgment interest rates.  *See, e.g.*, In re Nichole Trahan, 10 F.3d 1190, (5th Cir. 1994); and Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096 (5th Cir. 1981).  Generally, the federal courts sitting in admiralty are not bound by state-prescribed legal interest rates. Edinburgh Assurance Co. v. R.L. Burns Corp., 669 F.2d 1259 (9th Cir. 1982) and can award interest at prevailing commercial rates. *See, e.g.* Cargill, Inc. v. Taylor Towing Service, Inc., 642 F.2d 239 (8th Cir. 1981).  In re AMOCO CADIZ, 1992 A.M.C. 913 (7th Cir. 1992) the Court held that the market rate for purposes of calculating prejudgment interest is what the victim would pay to borrow money. The AMOCO CADIZ Court determined that evidence of the average prime rate for the period in question is a reasonable consideration.  *Id.*; *see also* United States v. Central Gulf Lines, Inc., 974 F.2d 621 (5th Cir. 1992) (holding District Court sitting in admiralty may look to the cost of borrowing to determine the interest rate on a judgment).  According to Wall Street Journal historical data reported by Bankrate.com, the average prime rate, as of May 7, 2008, is 5.00 percent. Weiss Decl. at para. 9; Exh. C to Weiss Decl. (Bankrate.com schedule reflecting WSJ prime rate of 5.0%).  PLAINTIFF thus respectfully requests that Judgment enter and include prejudgment interest, calculated at the rate of five percent (5%) per annum.

///

### G.    Total Damages Recoverable

As detailed above, PLAINTIFF is entitled to judgment for the following damages:

1.    **Wharfage Arrearages**. As explained above and appearing from the Declaration of Brad Oliver, the account for the DEFENDANT VESSEL at the time of her arrest stood in arrears in an amount of $1,929.60. Oliver Decl. at para. 6-7.

2.    **Guest Vessel Wharfage Fees**. As demonstrated above, as a matter of contract, industry custom, and equity, PLAINTIFF is entitled to recover transient wharfage fees for the period between the termination date of the Wharfage Contract and the date the U.S. Marshal arrested the DEFENDANT VESSEL, at the rate of $1.50 per foot of vessel length per day, or $60.00 per day for the DEFENDANT VESSEL (i.e., 40 feet X $1.50 = $60). Oliver Decl. at paras. 6-7. Forty seven days elapsed between the time the Wharfage Contract terminated on September 21, 2007 and (as reflected on the U.S. Marshal Form 285 on file herein) the date the U.S. Marshal seized the DEFENDANT VESSEL on November 7, 2007. PLAINTIFF is hence entitled to recover transient wharfage fees for the 47 days the offending vessel remained as a trespasser at its marina at the rate of $60.00 per day, which totals $2,820.00.

3.    ***Custodia Legis* Expenses – U.S. Marshal Fees and Substitute Custodian Fees**.

The United States Marshal will deduct some portion of the $3,000.00 deposit tendered by PLAINTIFF to the U.S. Marshal, for its use in connection with its services of process, notice of arrest and sale, port risk insurance, commission and preparation of a bill of sale. Weiss Decl. at para. 10. U.S. Marshal expenses will continue to accrue until such time as it is relieved of duties by the Court, presumably following the Court-Ordered sale of the DEFENDANT VESSEL and confirmation of the sale pursuant to the Local Admiralty Rules.

PLAINTIFF was appointed as the Substitute Custodian in this case. It invoiced for its services at the rate of $50.00 per week for detailed interior vessel inspections, plus general custodial fees at the rate of 50 cents per foot of vessel length per day (i.e., 40 feet X .50 = $20.00 per day), plus a wharfage component of $12.50 per foot per month (or $500.00 (i.e., $12.50 X 40 = $500). Custody of the DEFENDANT VESSEL was transferred to the Substitute Custodian by the U.S. Marshal on the date of the vessel arrest, November 7, 2008 and it is expected she will

1  remain its custody until she is sold at public auction pursuant to Order of this Honorable Court.

2  PLAINTIFF cannot accurately quantify the Substitute Custodian fees until such time as the

3  Substitute Custodian is released from its duties by the Court, presumably following the Court-

4  Ordered sale of the DEFENDANT VESSEL.

5      4.    **Filing Fee**.  The filing fee PLAINTIFF paid in the amount of $250.00 to institute

6  the instant action is recoverable as a cost of suit, both pursuant to Local Civil Rule 54.1 as well

7  as pursuant to terms of the Wharfage Contract.

8      **5.**   **Attorneys' Fees**.  For the reasons indicated above, PLAINTIFF has abandoned

9  its claim for attorneys' fees in this purely *in rem* action.

10                              **III**

11                        **CONCLUSION**

12      To continue this action further will result in a further squandering of judicial resources.

13  PLAINTIFF respectfully urges this Honorable Court to enter Judgement in this action, reflecting

14  the damages specified above.  However, because *custodia legis* expenses are still accruing, and

15  therefore PLAINTIFF's damages cannot yet be fully quantified, PLAINTIFF respectfully seeks

16  leave to submit a [Proposed] Final Order Entering Judgment By Court  (consistent with the

17  [Proposed] Interim Order Granting Judgment By Court, submitted concurrently herewith)

18  promptly after the sale of the DEFENDANT VESSEL, should the Court grant the concurrently

19  filed Motion for Interlocutory Vessel Sale.

20      For all of the above reasons and in the interest of fundamental justice, PLAINTIFF

21  respectfully requests that Judgment enter in favor of PLAINTIFF and against the DEFENDANT

22  VESSEL, as above requested.

23  Dated: May 21, 2008                Respectfully submitted,

24                                      WEISS & JONES

25

26      By:_____s/Philip E. Weiss_____
                    Attorneys for Plaintiff
27                  Bartell Hotels, dba Half Moon Anchorage
                    E-mail: shiplaw@earthlink.net

28