```
WEISS & JONES, L.L.P.
Philip E. Weiss, Esq. (No. 152523)
1551 Shelter Island Drive
San Diego, California 92106
Telephone: (619) 225-8884
Facsimile: (619) 225-8801
E-Mail: shiplaw@earthlink.net

Attorneys for Plaintiff
Bartell Hotels, a California Limited Partnership,
dba Half Moon Anchorage
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARTELL HOTELS, A California Limited Partnership, dba HALF MOON ANCHORAGE,<br><br>    Plaintiff,<br><br>v.<br><br>M/Y CLAIRE IRENE, a 1968 Owens Motor Yacht of Approximately 40-Feet In Length And 11-Feet In Beam, Bearing California D.M.V. Registration No. CF 8646 ED, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*,<br><br>    Defendant. | Case No. 07 CV 2097 L (BLM)<br><br>IN ADMIRALTY<br><br>POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID<br><br>F.R.C.P. Supplemental Admiralty Rule E(9); 46 U.S.C. §§30101-31343<br><br>SUBMITTED ON PAPERS<br>(Oral Arguments Not Requested)<br><br>Judge:    Hon. M. James Lorenz<br>Courtroom:  14 - 5th Floor<br>Date:     July 14, 2008<br>Time:    10:30 a.m. |

COMES NOW Plaintiff BARTELL HOTELS, dba HALF MOON ANCHORAGE ("PLAINTIFF") and respectfully submits its Memorandum of Points and Authorities in support of its Motion for Interlocutory Vessel Sale and Authorization to Credit Bid.

## I.

## PROCEDURAL HISTORY/STATEMENT OF FACTS

This is an action *in rem* to satisfy a maritime lien that exists in favor of PLAINTIFF as a result of its having provided maritime "necessaries" (wharfage services) for the benefit of the

1  DEFENDANT VESSEL, for which it was not paid. *See, e.g.*, Ex Parte EASTON, 95 U.S. 681
2  (1877) (recognizing contracts for wharfage services, whether express or implied, give rise to
3  maritime liens); *see also* The WESTERN WAVE, 77 F.2d 695 (5th Cir. 1935). PLAINTIFF
4  seeks an Order permitting the interlocutory sale of the DEFENDANT VESSEL. Due to the
5  unseaworthy condition of the DEFENDANT VESSEL (discussed below) it appears extremely
6  unlikely that anyone will bid at the time of the auction, and that PLAINTIFF will accordingly
7  be forced (should the Court permit it) to credit bid and to purchase the DEFENDANT VESSEL
8  at the auction, and ultimate to pay a boatyard to dismantle and dispose of the offending
9  DEFENDANT VESSEL. In the unlikely event someone *were* to place a bid, PLAINTIFF has
10 requested in its Motion for Default Judgment By Court (submitted concurrently herewith) that
11 such proceeds be applied toward (partial) satisfaction of PLAINTIFF's maritime lien.

12     Neither the owner of the DEFENDANT VESSEL nor any other person or entity answered
13 or otherwise responded to PLAINTIFF's Verified Complaint within the period permitted by the
14 Federal Rules of Civil Procedure, and accordingly the Clerk of this Honorable Court has entered
15 a Default against the DEFENDANT VESSEL. Similarly, no person or entity has filed a Verified
16 Statement of Right or Interest in the DEFENDANT VESSEL, as required by Supplemental
17 Admiralty Rule C(6)(a)(i). PLAINTIFF is, accordingly, the lone litigant in this action.

18     PLAINTIFF operates a marina located at 2303 Shelter Island Drive, San Diego,
19 California 92106. The DEFENDANT VESSEL is a 1968 Owens motor yacht of approximately 40
20 feet in length and 11 feet in beam, named and known as "M/Y CLAIRE IRENE," California
21 D.M.V. (expired) Registration No. CF 8646 ED.

22     PLAINTIFF purchased the former owner's interest in Half Moon Anchorage (hereinafter
23 the "Marina") in January, 2007. Declaration of Brad Oliver in Support of Motion for Order for
24 Interlocutory Vessel Sale ("Oliver Decl.") at para. 2. At that time, the DEFENDANT VESSEL
25 had already been there for years, apparently since at least 2001. Oliver Decl. at para. 2. Based
26 on its review of an accounting history relating to the DEFENDANT VESSEL, PLAINTIFF
27 believes and has alleged that since March, 2001, the account for the DEFENDANT VESSEL has
28 ///

POINTS AND AUTHORITIES IN SUPPORT MOTION FOR ORDER FOR                                           Page -2-
INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID                          Case No. 07 CV 2097 L (BLM)

1  been arrears on at least 15 occasions, and that on at least two occasions her owner tendered
2  checks that were returned for want of sufficient funds. Oliver Decl. at para. 3.

3      Mr. Michael J. Ardelt, the General Manager of the Marina prior to the time Plaintiff
4  purchased the former owner's interest in the marina, has informed PLAINTIFF that he has
5  personally seen an Agreement for Wharfage and Docking (the standardized contract used by the
6  Marina's former owner, hereinafter referred ti as the "Wharfage Contract") that was signed by
7  the owner of the DEFENDANT VESSEL, Mr. Kurt Hatch; however, he has been unable in spite
8  of his good faith efforts to locate said Agreement or a copy. *See also*, Declaration of Michael
9  J. Ardelt Concerning Existence of Month-to-Month Contract for Defendant Vessel (at para. 8),
10 on file herein and previously offered in support of PLAINTIFF's (Second) Application for
11 Issuance of Warrant for Vessel Arrest.

12     The "Wharfage Contract" is, by its own terms, a month-to-month contract, terminable by
13 either party, as paragraph 2 specifically provides that "Owner understands and agrees that this
14 agreement memorializes a month-to-month contract to provide mooring . . . . [and paragraph 5
15 provides that] Owner understands and agrees that this agreement may be terminated by either
16 party upon written notice to the other in such a manner so that the other party will receive said
17 notice at least thirty (30) days before said termination." Naturally, it also requires that the
18 DEFENDANT VESSEL and her owner to timely tender monthly payments for wharfage and
19 other maritime services; PLAINTIFF alleges in this action the DEFENDANT VESSEL failed
20 to perform this duty of payment.

21     Even if Mr. Hach did not sign the Wharfage Contract, an implied freely terminable
22 month-to-month wharfage contract would nevertheless have existed between PLAINTIFF on the
23 one hand and the DEFENDANT VESSEL and her owner on the other hand, as a well defined
24 controlling industry standard exists within the Port of San Diego among privately operated
25 marinas, pursuant to which marinas enter into freely terminable month-to-month wharfage
26 contracts, rather than long term wharfage contracts. Declaration of Philip E. Weiss at para. 3.
27 What is more, even if no controlling industry standard existed (and PLAINTIFF is unaware of
28 any evidence to suggest this), a freely terminable implied wharfage contract on month-to-month

1  terms nevertheless exists between PLAINTIFF on the one hand and the DEFENDANT VESSEL
2  and her owner on the other hand, since California Civil Code Section 1943 provides that "[a]
3  hiring of real property, other than lodgings and dwelling-houses, in places where there is no
4  custom or usage on the subject, is presumed to be a month-to-month tenancy unless otherwise
5  designated in writing . . . ."

6  After it purchased the Marina, in order to control risk and liability and for other business
7  reasons, PLAINTIFF carefully reviewed the existing circumstances and procedures at the Marina
8  and decided to make certain improvements and changes. Oliver Decl. at para. 4. This included
9  examining the vessels at the Marina in order to generally evaluate their condition, verifying that
10 all vessels located at the Marina were insured, and preparing a new wharfage contract for review
11 and execution by vessel owners. Oliver Decl. at para. 4. It appeared, upon PLAINTIFF's
12 examination, that the 40 year old DEFENDANT VESSEL was (as she still is) in poor,
13 unseaworthy condition, exhibiting evidence of dry rot, years of growth on her bottom, blistering
14 and peeling paint, with debris scattered aboard. Oliver Decl. at para. 4. In fact, during the
15 pendency of this action it became necessary for PLAINTIFF to request an Order from this
16 Honorable Court permitting it, in it capacity as Substitute Custodian, to arrange for the
17 dewatering of the DEFENDANT VESSEL and disposal of contaminated water. The requested
18 Order issued.

19 PLAINTIFF requested that all vessel owners for whom PLAINTIFF did not have current
20 evidence of vessel insurance, provide such evidence. Oliver Decl. at para. 5. PLAINTIFF also
21 requested that vessel owners review and execute a new wharfage contract. Oliver Decl. at para.
22 5. Although a few boat owners failed to provide the requested proof of insurance or declined
23 to execute the new wharfage contract and hence moved their vessels to other locations, the vast
24 majority of boat owners complied with these requests, did not exercise their right to terminate
25 their wharfage contracts, and they remain today at the Marina as tenants in good standing.
26 Oliver Decl. at para. 5. After it purchased the leasehold PLAINTIFF also dispatched a form
27 letter to all vessel owners, including Mr. Hach, notifying them they were free to pick up a new
28 Marina gate access card at the Marina Office. Oliver Decl. at para. 5. Mr. Hach never retrieved

1 a new gate access card at the Marina Office. Oliver Decl. at para. 5. Mr. Hach also never
2 provided the requested proof of insurance. Oliver Decl. at para. 5.

3      As a consequence of the poor condition of the DEFENDANT VESSEL, her continuing
4 lack of any maintenance whatever and her owner's refusal to both provide proof of insurance and
5 to execute a new wharfage contract, PLAINTIFF became compelled to terminate the wharfage
6 contract for the DEFENDANT VESSEL. Accordingly, on August 17, 2007 PLAINTIFF's
7 counsel dispatched a letter via Certified U.S. Mail to Mr. Hach, in which he was advised of the
8 termination of his wharfage contract, effective 34 days from the date of the letter – on September
9 20, 2007. A true and correct copy is attached as Exhibit B to the Declaration of Philip E. Weiss,
10 filed contemporaneously herewith; Weiss Decl. at para. 4.. This letter also explained the legal
11 fiction indulged in admiralty that a vessel is a (juridical) person, and that accordingly if the
12 DEFENDANT VESSEL was not removed by the specified date she would become a trespasser
13 and could be held accountable by way of a vessel arrest and subsequent interlocutory vessel sale.
14 It also reminded Mr. Hach that any allegations he advanced concerning claimed damage to his
15 vessel and financial and other misconduct by a marina manager employed by a <u>former</u> owner[1/]
16 are not properly addressed by PLAINTIFF, the current owner of the Marina.

17      On the date specified for termination of the wharfage contract (August 20, 2007)
18 PLAINTIFF's counsel contacted Mr. Hach, the owner of the DEFENDANT VESSEL, to inquire
19 as to why she had not been removed from the Marina, and in order to ascertain his intentions vis-
20 a-vis removing her from the Marina. Weiss Decl. at para. 5. Mr. Hach did not agree to remove
21 the DEFENDANT VESSEL. To the contrary, he insisted that if PLAINTIFF did not pay him
22 $50,000 to $70,000, (apparently for "damages" he believes his vessel sustained as a result of
23 claimed misconduct by a Marina Manager, who was employed by the former owner of the
24 marina), he would "sue PLAINTIFF for $1.2 million." Weiss Decl. at para. 5. He also indicated

---

[1/] It is believed that a Marina Manager employed by the entity that owned the marina prior to PLAINTIFF purchasing it (Ms. Ann Miller) was terminated and prosecuted in connection with her scheme to divert to herself wharfage fees and other monies that were due to her employer. PLAINTIFF has no way of knowing whether the owner of the DEFENDANT VESSEL, Mr. Hach was a victim of Ms. Miller's misconduct, which occurred prior to the time PLAINTIFF owned the marina. Weiss Decl. at para. 7.

1  that he believed that he would be unable to obtain another slip for his vessel, even if approved,
2  "because Homeland Security will not permit him to move." Weiss Decl. at para. 6. PLAINTIFF
3  is unaware of any restriction imposed by "Homeland Security" that would prevent or inhibit a
4  boat owner from moving his or her vessel to a new berthing location. Weiss Decl. at para. 6.
5  There being no alternative, PLAINTIFF became compelled to seek the assistance of this
6  Honorable Court to vindicate its property and admiralty rights, and now seeks an Order directing
7  the U.S. Marshal to sell the DEFENDANT VESSEL at public auction.

## II.

## FEDERAL RULES OF CIVIL PROCEDURE

## PROVIDE FOR SALE OF THE *RES*

11  Rule (E)(9)(b) of the Federal Rules of Civil Procedure, Supplemental Rules for
12  Certain Admiralty and Maritime Claims governs interlocutory vessel sales:

> "If property that has been attached or arrested is perishable, or liable to deterioration, decay, or injury be detained in custody pending the action, or if the expense of keeping the property is excessive or disproportionate, or if there is an unreasonable delay in securing the release of property, the Court, on application of a party or of the other person or organization having the warrant, may order the property or any portion thereof to be sold; and the proceeds, or so much thereof as shall be adequate to satisfy any judgment, may be ordered brought into the court to abide the event of the action; or the Court may, upon motion of the defendant or claimants, order delivery of the property to the defendant or claimant, upon the giving of security in accordance with these rules."

19  In order to prevail on a motion for interlocutory sale, the moving party *need only show that*
20  *one* of these three conditions is met. Merchants National Bank of Mobile v. Dredge GENERAL G.L.
21  GILLESPIE, 663 F.2d 1338, 1341 (5thCir. 1981). In the present case a judicial sale of the Defendant
22  Vessel is surely warranted because *all three* conditions specified in Rule E(9)(b) are fulfilled.

### A.  The Defendant Vessel Is Deteriorating In Condition And Value By Reason of Her Idleness While In Custody.

25  Not surprisingly, Admiralty Courts have routinely found that prolonged idleness
26  associated with the arrest of a vessel leads to physical deterioration, which justifies
27  interlocutory sale of a defendant vessel. *See, e.g.,* Silver Star Enterprises, Inc. v. M/V
28  SARAMACCA, 19 F.3d 1008 (5th Cir. 1994) (excessive expense in keeping a vessel under

seizure and unreasonable delay in securing vessel release are independent and valid grounds for interlocutory sale); *see also*, United States vs. One Parcel of Real Property, 1989 LEXIS 95, 1989 W.L. 1086 (D. Oregon 1989). As is clear from the Declaration in Support of Appointment of Substitute Custodian on file herein, while in custody the DEFENDANT VESSEL's maintenance is of necessity limited -- the focus being simply on preservation from accident. Plaintiff complains that as the DEFENDANT VESSEL's machinery, equipment and general condition deteriorate, her value is commensurately decreasing. Because money does not decay, deteriorate or depreciated, the best way of the Court to preserve the (any) value of the *res* is to convert it to money, by way of public auction.

The DEFENDANT VESSEL is a 40 year old motor vessel. Although a survey has not been performed, she is believed to be in *poor condition*, suffering from dry rot, years of growth on her bottom, blistering and peeling paint, Oliver Decl. at para. 6. These conditions suggest she has not received even basic maintenance literally for years, and that as a result she has little, no or (most likely) *negative* value. Oliver Decl. at para. 6. It appears almost certain that the value of the vessel is already insufficient to satisfy Plaintiff's maritime lien, and certainly her value is insufficient to cover both the lien and the costs of suit. Every day the DEFENDANT VESSEL remains unused and in custody results in a diminution in her condition and, accordingly, her value. Her interlocutory sale is manifestly justified on this basis, and additionally independently for the additional reasons set forth below.

**B.    Failure By Defendants To Make Any Attempt**
**       To Secure The Release of the Defendant Vessel.**

Supplemental Admiralty Rules (E)(5)(a), E(5)(b) and E(9)(b) of the F.R.C.P. provide for the release of the vessel on the giving of adequate security. Local Rule 72.1(e) provides for the speedy hearing for one who would have an arrested vessel released. In this case, no person or entity has posted or sought to post security for the release of the vessel, or requested a prompt hearing under Supplemental Admiralty Rule E(4)(f). This is hardly surprising, given the deplorable condition of the DEFENDANT VESSEL. Where, as here, no attempt whatever is made to release a defendant vessel from arrest, District Courts have

approved interlocutory vessel sales, based on a finding of "unreasonable delay [in] securing the release of the defendant vessel," as authorized by Supplemental Admiralty Rule E(9)(b). *See*, *e.g.*, Ferris Financial Service, Co. v. O.S. ARCTIC PRODUCER, 567 F. Supp. 400 (W.D. Wash. 1983); *see also*, Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338, 1341-42 (5th Cir. 1981) (affirming sale of boat based on vessel decay, unreasonable delay and excessive expense). In these circumstances an Order for interlocutory sale is surely proper and supportable in logic and law.

### C. The Cost of Keeping the Defendant Vessel In Custody Is Excessive and Disproportionate.

Where, as here, no payments are made to creditors, the vessel is idle, and costs of custody are accruing, Admiralty Courts have found the condition of "excessive cost," justifying an interlocutory sale of property. *See*, United States v. One Parcel of Real Property, 921 F.2d 170 (1990); *see also,* Ferris Financial Services Co. supra at 567 F. Supp. 400, 401 (cost of custody disproportionate to value of vessel constitutes "excessive cost" justifying interlocutory sale, particularly where [as here] no attempt made to release vessel"); *see also*, Silver Star Enterprises, supra. The Order Appointing Substitute Custodian in this case provides for payment to the Substitute Custodian based on the rates prevailing in the Port. The prevailing rate for custodial services in the Port of San Diego is believed to be not less than $12.50 per foot per month for wharfage and 50 cents per foot per day for custodial services (daily checks of the DEFENDANT VESSEL, including her mooring lines, orientation in the water and to confirm she has sustained obvious damage), plus $50.00 per week for more detailed vessel inspections, including such tasks as confirming that bilges do not have excessive water, checking that dewatering pumps (if equipped) remain sufficiently functional to pump out any accumulated water in the bilges, inspecting the interior for damage or other problems that should be brought to the parties' attention, and confirming shore power (if any) remains properly connected. Weiss Decl. at para. 8. The vessel at issue is 40-feet in length. Hence, apart from other additional custodial services (such as diving services, zinc replacement and the like), the custodial service fees for the DEFENDANT

1  VESSEL accrue at a monthly rate of not less than $1,300.00 per month (i.e., $12.50 X 40 =
2  $500.00 (wharfage component) + .50 x 40 = $20.00/day x 30 = $600 (daily custodial
3  component) + $50/week x 4 weeks = $200.

In the light of mounting custodial costs, the inevitable and unavoidable deteriorating condition of the DEFENDANT VESSEL while she is in custody, and the corresponding continuing erosion of her value, it is respectfully urged it would be just and proper for this Honorable Court to grant Plaintiff's Application requesting authority to sell the DEFENDANT VESSEL at public auction, as specifically permitted by the Supplemental Admiralty Rules to the Federal Rules of Civil Procedure (Rules C and E).

### III.

### CREDIT BID AUTHORIZATION

Local Admiralty Rule E.1(e)(2) provides that when a Court has determined a plaintiff has a valid claim senior in priority to all other "parties," the plaintiff with a valid security interest in the vessel may bid, without payment of cash, up to the total amount of the secured indebtedness, provided such plaintiff provides notice to all parties at least 10 days in advance of the date specified for sale of the defendant vessel. In the case at bar, no party, apart from the Plaintiff, has asserted any maritime lien claim against the DEFENDANT VESSEL. Hence, as it is the only maritime lien claimant, PLAINTIFF's claim is, by definition, senior to all other claims in this action. Accordingly, PLAINTIFF respectfully urges that this Honorable Court authorize PLAINTIFF herein to credit bid at the auction of the DEFENDANT VESSEL an amount up to the lien amount specified in its Verified Complaint ($4,389.00), plus its actual costs of suit, including U.S. Marshal, substitute custodian and other *custodia legis* expenses. PLAINTIFF does not request or seek to include in the sum it is permitted to credit bid attorneys' fees, as PLAINTIFF acknowledges that (apart from claims brought by holders of Preferred Ship Mortgages) Federal Courts generally decline to include attorneys' fees as part of a maritime lien. *See*, Gulf Marine & Indus. Supplies, Inc. v. M/V GOLDEN PRINCE, 2001 A.M.C. 817 (5th Cir. 2000) (so recognizing).

///

## IV.

## CONCLUSION

Because the DEFENDANT VESSEL lies idle in salt water where she is subject to continuing deterioration within the meaning of Supplemental Admiralty Rule E(9)(b), because the potential monthly cost of custody is disproportionate to the presumed value of the property, because plaintiff is realizing a monthly erosion of its maritime security interest in the DEFENDANT VESSEL (which it rightfully maintains by operation of maritime law), because no party, entity or person has made any effort whatever to post security or otherwise seek the release of the DEFENDANT VESSEL, because the value of the DEFENDANT VESSEL could potentially be exceeded by custodial expenses, because there continues to be an unreasonable delay in securing the release of the DEFENDANT VESSEL, because the Court has a duty to preserve the value of the *res* in its custody, and in the interest of fundamental justice, PLAINTIFF respectfully urges this Honorable Court to grant its Motion for Interlocutory Vessel Sale and Authorization to Credit Bid.

Dated: May 30, 2008         Respectfully submitted,

WEISS & JONES

By:     s/Philip E. Weiss
Attorneys for Plaintiff
Bartell Hotels, a California Limited
Partnership, dba Half Moon Anchorage
E-mail: shiplaw@earthlink.net