```
WEISS & JONES
Philip E. Weiss, Esq. (No. 152523)
1551 Shelter Island Drive
San Diego, California 92106
Telephone: (619) 225-8884
Facsimile: (619) 225-8801


Attorneys for Plaintiff
Bartell Hotels, a California Limited Partnership,
dba Half Moon Anchorage
Attorney for Plaintiff
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARTELL HOTELS, A California Limited Partnership, dba HALF MOON ANCHORAGE,<br><br>Plaintiff,<br><br>v.<br><br>M/Y CLAIRE IRENE, a 1968 Owens Motor Yacht of Approximately 40-Feet In Length And 11-Feet In Beam, Bearing California D.M.V. Registration No. CF 8646 ED, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*,<br><br>Defendant. | Case No. 07 CV 2097 L (BLM)<br><br>IN ADMIRALTY<br><br>DECLARATION OF BRAD OLIVER IN SUPPORT OF PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE<br><br>F.R.C.P. Supplemental Admiralty Rules C and E.<br><br>46 U.S.C. Sections 30101-31343 |

I, Brad Oliver, declare under penalty of perjury under the laws of the United States and the State of California as follows:

1.    I am employed by Plaintiff Bartell Hotels as the Marina Manager for the marina located on Shelter Island, San Diego, California, known as Half Moon Anchorage. I have personal knowledge of the below matters, and if called to testify as to such matters I could and would competently testify thereto. I respectfully offer this Declaration in Support of Plaintiff's Motion for Interlocutory Vessel Sale.

///

///

1    2.    PLAINTIFF purchased the former owner's interest in Half Moon Anchorage
2  (hereinafter the "Marina") in January, 2007. Based on my review of accounting records and my
3  discussions with Mr. Mike Ardeldt (the former General Manager employed by the former owner of
4  the marina), I believe that at the time PLAINTIFF purchased the marina the DEFENDANT VESSEL
5  had already been at the marina for several years, apparently since at least 2001.
6    3.    Based on my review of an accounting history relating to the DEFENDANT VESSEL,
7  I believe that since March, 2001 the account for the DEFENDANT VESSEL has been arrears on at
8  least 15 occasions, and that on at least two occasions her owner (Mr. Hach) tendered checks that
9  were returned for want of sufficient funds.
10   4.    After it purchased the Marina, in order to control risk and liability and for other
11 business reasons, PLAINTIFF carefully reviewed the existing circumstances and procedures at the
12 Marina, and decided to make certain improvements and changes. This included examining the
13 vessels at the Marina in order to generally evaluate their condition, verifying that all vessels located
14 at the Marina were insured, and preparing a new wharfage contract for review and execution by
15 vessel owners. Based on my extensive waterfront experience (I served for 10 years at San Diego
16 Yacht Club as Dock Master and in other positions, and have dewatered at least 100 yachts) I believe
17 the DEFENDANT VESSEL is in poor condition and is unquestionably unseaworthy, in that she is
18 not reasonably fit for her intended use as a yacht. My examination of the DEFENDANT VESSEL
19 confirmed she suffers from significant dry rot, has years of growth on her bottom, has blistering and
20 peeling paint and is generally in extremely poor condition. I was forced during this litigation to
21 request that counsel seek an Order from the Court permitting extensive dewatering of contaminated
22 water aboard the DEFENDANT VESSEL.
23   5.    In order to create greater administrative uniformity and to address actual or potential
24 problems that PLAINTIFF might have "inherited" after it purchased the marina in January, 2007, I
25 asked that all vessel owners whom records suggested did not have in place current, provide evidence
26 of such insurance. I also requested that all vessel owners review and execute a new wharfage
27 contract. Although a few boat owners failed to provide the requested proof of insurance or declined
28 to execute the new wharfage contract and decided instead to move their boats to new locations, the

1. vast majority of boat owners complied with these requests, did not exercise their right to terminate their wharfage contracts, and they remain today at the Marina as tenants in good standing. After it purchased the leasehold I also sent a form letter to all vessel owners, including Mr. Hach, notifying them they were free to pick up a new Marina gate access card at the Marina Office. For unknown reasons, Mr. Hach never retrieved a new gate access card at the Marina Office. Critically, Mr. Hach also never provided the requested proof of insurance.

6. The DEFENDANT VESSEL is a 40 year old motor vessel. Although a survey has not been performed, I believe she is in such poor condition she is believed to be in poor condition, suffering from dry rot, years of growth on her bottom, blistering and peeling, all of which I believe suggest she has not received even basic maintenance literally for years, and that as a result she has little, no or (most likely) negative value.

Executed this 9 day of May, 2008 at San Diego, California.

Brad Oliver, Marina Manager

BRAD OLIVER DECLARATION IN SUPPORT OF
PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE

Page -3-
Case No. 07 CV 2097 L (BLM)